In re Paul J. CHAPMAN, Jr., Debtor.

Paul CHAPMAN, Jr., Plaintiff,

v.

Mary Lois BALES, Defendant.

Bankruptcy No. 81–00189–R.
Adv. No. 81–0070–R.

United States Bankruptcy Court,
E. D. Virginia,
Richmond Division.

May 24, 1982.

Charles W. Beddow, Beddow, Marley, Burgess & Murphey, Chesterfield, Va., for plaintiff.

Robert E. Henley, III, Martin, Meyer & Rothenberg, Richmond, Va., for defendant.

## MEMORANDUM OPINION

BLACKWELL N. SHELLEY, Bankruptcy Judge.

This matter comes on upon the filing by Paul Chapman, Jr. (Chapman), the Debtor herein, of a Complaint to determine the dischargeability of a debt owed to Mary Lois Bales (Bales). Bales by answer and counterclaim asked this Court to determine certain debts Chapman owed her pursuant to a final decree of divorce and separation agreements to be nondischargeable. After trial and upon the filing of briefs by counsel the Court makes the following determination.

### STATEMENT OF THE FACTS

Chapman and Bales entered into two separation agreements prior to obtaining their divorce on December 2, 1980. They executed the first separation agreement on June 21, 1979 by which they agreed upon child support and alimony terms and for the disposition of their home. Chapman and Bales agreed that Bales and their children would continue to reside in the house which they owned as tenants by the entirety. Chapman agreed to make all mortgage payments and to maintain an insurance policy on the property. They agreed that upon Bales' remarriage or removal from the residence, the house would be sold and the proceeds of the sale would be divided between them.

Chapman and Bales entered into a new agreement on July 31, 1980 in which they amended their agreement of June 21, 1979. In the amended agreement Chapman

agreed to pay Bales $600.00 per month for the support and maintenance of their children, $100.00 more per month than in the prior agreement. Bales and Chapman disputed the sum for which the child and spousal support payments were in arrears under the original agreement due prior to July 31, 1980; however, in the July, 1980 agreement they settled this arrearage agreeing Chapman owed Bales $3,000.00. Bales relinquished all claims for future alimony and Chapman conveyed to Bales his interest in their real estate. The amended agreement also provided that Chapman had the right to obtain a loan from a lending institution and secure that loan by a deed of trust on the home fully owned by Bales by virtue of this agreement. Chapman agreed to timely pay the note secured by the deed of trust on the property and to hold Bales harmless therefrom. In the event of Chapman's default or death, payments would be made from Chapman's pension or profit sharing plan or from his estate. The agreement further provided that absent payment from these sources Bales would be entitled to recover costs and attorney's fees incurred in settling the matter and that she also would be able to recover the $3,000.00 in arrearages for child and spousal support.

Chapman obtained a loan from Freedlander, Incorporated on July 31, 1980 and secured the loan by a deed of trust on Bales' house. Although Chapman was unemployed at this time, he submitted a job verification statement from Nisson Motors Company in Portsmouth, Virginia indicating he held a job with that firm. Eric Freedlander, the President of Freedlander, Incorporated, stated that his company would not have approved a loan to an individual who was unemployed on the date of the loan; however, the actual loan officer who authorized the loan to Chapman did not testify at the hearing. General Electric Credit Corporation purchased the loan from Freedlander, Incorporated and Chapman made no payments on the loan. Bales made one payment in the amount of $172.83 on account of the loan and she purchased the note for $6,823.57 in order to avoid a foreclosure on her house.

Bales now asks this Court to determine that the following debts owed her by Chapman are nondischargeable in bankruptcy. She seeks the compromised $3,000.00 in arrearages for child support and spousal support, $6,823.57 on account of the second deed of trust note, and $172.87 on account of a payment she made pursuant to the deed of trust note.

## CONCLUSIONS OF LAW

Debts which are founded on a husband's legal obligation to support and maintain his wife and children are exempted from discharge in bankruptcy pursuant to 11 U.S.C. § 523(a)(5).[1] Although the policy justification for granting a debtor a discharge in bankruptcy is to provide him with a "fresh start" in life " . . . unhampered by the pressure and discouragement of pre-existing debt," competing policy reasons led Congress to explicitly except from discharge support obligations owed a spouse and child. *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934). Alimony and child support stem from a husband's marital duty to support his wife and children and to protect the community from families being left destitute by irresponsible husbands and fathers. *Goggans v. Osborn*, 237 F.2d 186, 189 (9th Cir. 1956); *See also, Westmoreland v. Dodd*, 2 F.2d 212 (5th Cir. 1924) *cert. denied*, 267 U.S. 595, 45 S.Ct. 231, 69 L.Ed. 805 (1925). Congress chose not to except from discharge debts arising out of the division of marital property. *See In re Woods*, 561 F.2d 27 (7th Cir. 1977); *Jones v. Tyson*, 518 F.2d 678 (9th Cir. 1975). A property settlement agreement deals with the division of

---

1. 11 U.S.C. § 523(a) provides that "[a] discharge ... does not discharge an individual debtor from any debt ... (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of both spouse or child, in connection with a separation agreement, divorce decree, or property settlement agreement, but not to the extent that ... (B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support...."

property belonging to a husband and a wife and a wife is entitled to waive all of her claims for support and maintenance or alimony in executing a property settlement agreement. *In re Smith*, 436 F.Supp. 469, 474 (N.D.Ga.1977).

In determining the true nature of a post-marital obligation courts must use bankruptcy law, not state law.[2] H.R.Rep.No.95–595, 95th Cong., 1st Sess., 363 (1977). *See also*, Note, *Discharge of Post-Marital Support Obligations Under the New Bankruptcy Code*, 4 Harv. Women's L.J. 177 (1981). The marital discharge exception requires courts to look beyond the designation given an agreement by the parties or by state law in order to determine the true character of the underlying obligation. *Shacter v. Shacter*, 467 F.Supp. 64, 66 (D.Md.1979) *aff'd.*, 610 F.2d 813 (4th Cir. 1979). The relevant inquiry this Court faces is whether the agreement between Chapman and Bales provides for the division of property or whether its nature embodies the legal obligation to provide support and maintenance for Bales and her children. *See In re Liverman*, 463 F.Supp. 906, 907 (E.D.Va.1978).

■ Several factors are useful in determining whether an agreement is simply a property settlement or whether it embodies a legal obligation to support the other spouse. The test is the substance of the obligation being enforced and not the title given the agreement. *See* 11 U.S.C. § 523(a)(5)(B). In the instant case these factors indicate that the parties entered into a property settlement agreement and that the debt on account of that agreement does not constitute alimony. The agreement carries none of the hallmarks of a normal support and maintenance arrangement. On July 31, 1980 Chapman conveyed his entire interest in the house to Bales which he and Bales owned as tenants by the entirety. Rather than being an obligation payable to Bales in installments over a substantial period of time, the single transfer between Chapman and Bales constituted the entire transaction.[3] Also, although Clause 1 of the agreement established the amount which Chapman agreed to pay Bales each month for the support and maintenance of his children, Bales expressly relinquished all of her claims for future alimony in Clause 2.[4] Bales' waiver is unambiguous and definite and establishes that her bargain with Chapman was a property settlement agreement by which she exchanged her right to alimony for his interest in the house.

The debt Chapman owes Bales on account of the loan he obtained from Freedlander, Incorporated, which note Bales later purchased, is neither in the nature of alimony nor child support pursuant to 11 U.S.C. § 523(a)(5)(B). Through the amended agreement Bales obtained Chapman's interest in the $20,000.00 equity they had in their house, Chapman obtained the right to place a $6,000.00 lien against that property, and Bales waived her right to $3,000.00 in arrearages in spousal and child support. Bales exercised her right to settle her claims against Chapman by private agreement and thereby waived all of her claims for alimony.

---

**2.** "What constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law. Thus, cases such as *In re Waller*, 494 F.2d 447 (6th Cir. 1974) . . . are overruled, and the result in cases as *Fife v. Fife*, 1 Utah 2d 281, 265 P.2d 642 (1952), is followed." H.R.Rep.No.95–595, 95th Cong., 1st Sess., 363 (1977), U.S.Code Cong. & Admin. News 1978, p. 5787.

**3.** Chapman agrees that his $600.00 monthly child support payment is nondischargeable.

**4.** The separation agreement entered into between Bales and Chapman, dated July 31, 1980, provides: "1. Husband agrees to pay unto wife for the support and maintenance of the minor children of the parties the sum of $600.00 per month payable in semi-monthly installments of $300.00 on the 15th and 20th of each month, the first of such payments being due and payable on August 1st, 1980. Husband agrees to make child support payments for each child until said child shall have completed their education, including college. It is further agreed that all payments for child support shall, with the approval of the appropriate Court, be made through the appropriate Juvenile and Domestic Relations Court. 2. Wife agrees to and does hereby relinquish all claims for future alimony."

Bales also argues that the debt Chapman incurred with Freedlander, Incorporated is nondischargeable pursuant to 11 U.S.C. § 523(a)(2).[5] Bales asserts Chapman obtained the loan by false pretenses and that Bales, as the assignee of the note, may recover on that basis. Bales failed to show by clear and convincing evidence that Freedlander, Incorporated, reasonably relied on a false statement published by Chapman. *See Brown v. Buchanan*, 419 F.Supp. 199 (E.D.Va.1975). The only evidence Bales introduced to show reliance was the testimony of Eric Freedlander, the President of Freedlander, Incorporated. The loan officer who authorized the extension of credit to Chapman did not testify. Eric Freedlander testified as to his company's routine procedure in extending credit to loan applicants; however, he noted that he was not individually involved in the extension of credit to Chapman. That testimony standing alone is insufficient to meet the clear and convincing standard enunciated in *Brown*. *In re Dawson*, 16 B.R. 70, 73 (Bkrtcy.E.D.Va.1981); *See also, In re Adair*, 17 B.R. 456 (Bkrtcy.N.D.Ga.1980).[6]

The compromise support arrearage in the amount of $3,000.00 for the period prior to July 31, 1980 likewise is dischargeable in bankruptcy. Alimony and past due support payments for children constitute a debt of a husband to his former wife which may be compromised or settled. *Seifert v. Seifert*, 374 So.2d 157, 159 (La. App.1979). *See also, Rodgers v. Rodgers*, 505 S.W.2d 138 (Mo.App.1974); *Wardle v. Wardle*, 464 P.2d 854 (Wyo.1970). Bales settled her claim for alimony and child support arrearages; however, Bales and Chapman agreed that Bales would be entitled to recover the $3,000.00 arrearage if Chapman defaulted in the payment of the deed of trust. Despite the language the parties

used, it is clear that this part of the agreement was also in the nature of property settlement. Bales gave up her right to these arrearages for Chapman's interest in the real estate. Again, none of the indicia of alimony and support are present.

Bales also alleged in her counterclaim that Chapman owed her $3,000.00 in child support arising after the second agreement and due since November, 1980 and that he owed George W. Farley $350.00 in attorney's fees and that both of these sums are outstanding and are nondischargeable. The parties settled these two claims prior to trial.

An appropriate order will issue.

---

**5.** 11 U.S.C. § 523(a)(2) provides "[a] discharge . . . does not discharge an individual debtor from any debt—(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—(A) false pretenses, false representation, or actual fraud . . . or (B) use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor

. . . reasonably relied; and (iv) that the debtor causes to be made or published with intent to deceive . . . ."

**6.** The issue whether Chapman defrauded Bales by obtaining this extension of credit from Freedlander, Incorporated was not raised in the pleadings or at trial.