United States Court of Appeals,

Fifth Circuit.

Nos. 96-20251, 96-20252.

Matter of Tommy E. SWATE, Debtor.

Tommy E. SWATE, Appellant,

v.

Dian Frances HARTWELL, Appellee.

Nov. 21, 1996.

Appeals from the United States District Court for the Southern District of Texas.

Before KING and HIGGINBOTHAM, Circuit Judges, and LAKE[*], District Judge.

LAKE, District Judge:

Tommy E. Swate appeals from a judgment affirming the bankruptcy court's order that lump-sum damages awarded by a state court for future alimony are not dischargeable under 11 U.S.C. § 523(a)(5). We Affirm.

I. *Background*

Swate and Dian Frances Hartwell entered into an Agreement Incident to Divorce to dissolve their marriage on July 31, 1981. On October 7, 1981, the state court signed a final Decree of divorce that incorporated the parties' obligations under the Agreement Incident to Divorce. The agreement and decree required Swate to pay Hartwell $1,000 per month, terminable upon Hartwell's death and subject to cost-of-living adjustments.

Swate filed for bankruptcy protection on March 20, 1987. Hartwell challenged the dischargeability of Swate's obligations under the Agreement Incident to Divorce in an adversary action filed with the bankruptcy court on July 15, 1988. Hartwell argued that the obligations were nondischargeable as "alimony, maintenance, or support" under 11 U.S.C. § 523(a)(5). The bankruptcy court agreed and entered a Judgment Denying Discharge of Alimony Obligation on May

---

[*]District Judge of the Southern District of Texas, sitting by designation.

19, 1989, with findings of fact and conclusions of law that stated in relevant part:

*FINDINGS OF FACT*

...

h. The Agreement Incident to Divorce, Section 7, is in the nature of "alimony" as that term is defined under § 523 of the Bankruptcy Code and is a non-dischargeable debt of Defendant in this bankruptcy proceeding.

i. The attorney's fees incurred by Plaintiff [Hartwell] in prosecuting her claim against Defendant [Swate] are non-dischargeable pursuant to the applicable provisions of the Bankruptcy Code.

*CONCLUSIONS OF LAW*

...

e. The Agreement Incident to Divorce, Section 7 ... and the Final Decree of Divorce ... create a non-dischargeable obligation on the part of Defendant pursuant to 11 U.S.C. § 523 as such creates an "alimony" obligation owing by Defendant to Plaintiff.

f. The attorney's fees and costs incurred by Plaintiff relating to prosecution and collection of her claim against Defendant in respect to such "alimony" obligation are non-dischargeable debts.

g. The "alimony" obligation as set forth in the Agreement Incident to Divorce (Section 7) between Plaintiff ... and Defendant ... dated July 31, 1981, and as set forth in that Final Decree of Divorce ... *including past, present, and future "alimony" obligations* and attorney's fees relating thereto, is hereby excepted from any bankruptcy discharge otherwise granted to Defendant in the above captioned bankruptcy proceeding and such "alimony obligation" is declared to be non-dischargeable in Defendant's bankruptcy proceeding. (emphasis added)

The bankruptcy court also granted Hartwell relief from the stay to allow her to pursue state claims against Swate to enforce the alimony provisions in the Agreement Incident to Divorce, and on March 2, 1989, Hartwell filed a petition in the state court seeking to recover alimony and support arrearages. On January 17, 1992, after the bankruptcy proceeding had been closed by the entry of a Final Decree on November 25, 1991, Hartwell filed her First Amended Original Petition in state court seeking damages for anticipatory breach of the alimony provisions in the Agreement Incident to Divorce.

On February 18, 1992, the state court entered a Post Divorce Final Judgment awarding Hartwell $572,284.14 pursuant to a jury verdict. This amount included damages for past-due child support ($4,050), past-due alimony ($67,580.26), anticipatory breach of the alimony provisions of the Agreement Incident to Divorce ($417,654.76), and attorney's fees ($63,159.87). Swate did not

2

appeal the judgment.

Swate again filed for bankruptcy protection on December 9, 1993. Hartwell filed an adversary action on March 2, 1995, objecting under 11 U.S.C. §§ 523(a)(5) and 727 to the discharge of the Post Divorce Final Judgment. The bankruptcy court granted Hartwell's motion for summary judgment, ruling Swate was barred by *res judicata* from challenging the nondischargeability of the debt because the prior bankruptcy court judgment had determined the same obligation to be nondischargeable under § 523(a)(5). The court concluded:

> The prior bankruptcy court order finds nondischargeable past, present, and future alimony and the attorneys fees and costs related to the prosecution and collection of the same. The Court concludes that res judicata by virtue of the bankruptcy court's prior nondischargeability order precludes the relitigation of the dischargeability of all sums stated in the post divorce judgment for child support, and alimony, including future alimony, attorneys fees related to the past, present, or future alimony obligations, and actuarial fees.

The district court affirmed the judgment of the bankruptcy court, ruling that Swate was barred by principles of *res judicata* and collateral estoppel from challenging the nondischargeability of the debt because the prior bankruptcy court judgment had determined the same obligation to be nondischargeable. The district court held that although the legal form of Swate's alimony obligation changed from a continuing monthly duty to a lump-sum liability, the Post-Divorce Final Judgment did not alter the substance of the obligation in both bankruptcy court proceedings:

> The issue in the second bankruptcy proceeding was the dischargeability of Swate's obligation to make payments to Hartwell under the state court's "Post-Divorce Final Judgment," which included a lump-sum award for past, present, and future alimony. In the first bankruptcy proceeding, the court found that Swate's obligation to make past, present, and future payments to Hartwell was in the nature of alimony and therefore nondischargeable. The "Post-Divorce Final Judgment" was based on the same right to payments determined to be alimony in the first Bankruptcy Court action. (Docket Entry No. 11, Ex. B, Jury Question # 4) For the purposes of *res judicata,* the state court judgment did not alter the substance of the obligation at issue in both Bankruptcy Court proceedings.

Swate now appeals from the district court's judgment.[1]

---

[1]After Swate appealed the bankruptcy court's judgment to the district court, Hartwell moved the bankruptcy court to dismiss her remaining claim under 11 U.S.C. § 727. The bankruptcy court, however, mistakenly dismissed both the § 727 and § 523 claims. Hartwell moved to Reform, Modify or Correct this judgment, and when the bankruptcy court entered an order "mooting" its prior order, Swate, out of an abundance of caution, appealed from the order to another district court. The second district court dismissed Swate's appeal because it duplicated

## II. *Analysis*

"One of the most venerable principles of American bankruptcy law is that a debtor's obligation to provide alimony or support to a spouse or former spouse will not be affected by the discharge order." *In re Tessler,* 44 B.R. 786, 787 (Bankr.S.D.Cal.1984) (citing *Audubon v. Shufeldt,* 181 U.S. 575, 579, 21 S.Ct. 735, 736, 45 L.Ed. 1009 (1901)). This concept is found in the Bankruptcy Code as § 523(a)(5), which exempts from discharge any debt owed to a former spouse or child for alimony, maintenance, or support. *Matter of Joseph,* 16 F.3d 86, 87 (5th Cir.1994). Property settlements, on the other hand, are dischargeable in bankruptcy. *In re Brody,* 3 F.3d 35, 38 (2d Cir.1993).[2] " "Whether a particular obligation constitutes alimony, maintenance, or support within the meaning of this section is a matter of federal bankruptcy law, not state law,' "[3] and is determined by examining the nature of the debt at the time it was created. *Matter of Davidson,* 947 F.2d 1294, 1296-97 (5th Cir.1991); *In re Wisniewski,* 109 B.R. 926, 929 (Bankr.E.D.Wis.1990); *In re Jenkins,* 94 B.R. 355, 360 (Bankr.E.D.Pa.1988); *In re Brown,* 46 B.R. 612, 614 (Bankr.S.D.Ohio 1985). "The circumstances of the parties subsequent to the entry of the judgment for divorce is irrelevant to that inquiry." *In re Larson,* 169 B.R. 945, 952 (Bankr.D.N.D.1994).

### A. *Res Judicata*

*Res judicata* is appropriate if (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; and (4) the same claim or cause of action was involved in both suits. *United States v. Shanbaum,* 10 F.3d 305, 310 (5th Cir.1994). If these conditions are satisfied *res judicata* prohibits either party from raising any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior

his first appeal, which by this time had been decided adversely to him. Swate's appeals from the judgments of the respective district courts were consolidated in this court.

[2] Swate does not argue that the Post Divorce Final Judgment is a property settlement.

[3] *Matter of Joseph,* 16 F.3d at 87 (quoting *Matter of Biggs,* 907 F.2d 503, 504 (5th Cir.1990)).

action. *Id.*

Swate argues that *res judicata* does not apply because the same claim was not involved in both bankruptcy proceedings. He contends that he was prevented in the second bankruptcy proceeding from raising two defenses that could not have been asserted in the first bankruptcy proceeding because they only arose after the Post Divorce Final Judgment was entered—(1) that the damages awarded for anticipatory breach of the alimony provisions were unreasonable, and (2) that the Post Divorce Final Judgment changed his obligation from a nondischargeable, unmatured, monthly alimony payment to a dischargeable lump-sum breach of contract award.

1. *The reasonableness of the damage award*

Swate argues that he was prevented from raising an affirmative defense regarding the "unreasonableness" of the lump-sum alimony award. He alleges that the alimony awarded was excessive because the nonmodifiable $3,475 in interest that accrues monthly on the $417,654.76 judgment for future alimony is three times larger than the modifiable, $1,400 monthly alimony payments due under the Agreement Incident to Divorce after cost-of-living adjustments. We are not persuaded by this argument. The reasonableness of an award for alimony is an issue for the state court. Because Swate could have challenged the unreasonableness of the lump-sum alimony award in state court, he was not denied this defense.

Nor are we persuaded that it would have been appropriate for the bankruptcy court to review the reasonableness of the lump-sum alimony award. Although the Sixth Circuit allows bankruptcy courts to review state law determinations of the reasonableness of support and alimony awards, *In re Calhoun,* 715 F.2d 1103 (6th Cir.1983), at least five other courts of appeal and many bankruptcy and district courts take a contrary view. *See In re Gianakas,* 917 F.2d 759 (3d Cir.1990); *Sylvester v. Sylvester,* 865 F.2d 1164 (10th Cir.1989); *Forsdick v. Turgeon,* 812 F.2d 801 (2d Cir.1987); *Draper v. Draper,* 790 F.2d 52 (8th Cir.1986); *In re Harrell,* 754 F.2d 902 (11th Cir.1985); *Fraser v. Fraser,* 196 B.R. 371 (E.D.Tex.1996); *In re Chedrick,* 98 B.R. 731 (W.D.Pa.1989); *In re Smith,* 97 B.R. 326 (Bankr.N.D.Tex.1989). We find persuasive the Second Circuit's explanation of the

5

majority rationale:

> An inquiry of the sort urged by the husband would put federal courts in the position of modifying the matrimonial decrees of state courts, thus interfering with the delicate state systems for dealing with the dissolution of marriages and the difficult and complex results that flow therefrom.... State-crafted family law mechanisms should not be disturbed by federal court intervention unless there is an unmistakable mandate from congress to do so in order to achieve a valid federal objective. We find no such mandate here. To the contrary, congress has clearly required the bankruptcy court to protect the rights of a former spouse receiving ali-mony at the expense of a debtor seeking a fresh start. The husband's argument would turn this legislative intent on its head by having the bankruptcy court entertain arguments about, and deciding issues of dischargeability on the basis of, a continuing need for support instead of protecting the award previously found by the state courts to be appropriate.

*Forsdick v. Turgeon,* 812 F.2d at 803-04 (citations omitted). We conclude that the state court, not the bankruptcy court, is the proper forum in which to consider the "excessiveness" of the alimony obligations imposed by the final decree. *In re Smith,* 97 B.R. at 330.

Swate attempts to distinguish these cases, arguing that they involved fact patterns where the parties could still seek modifica-tion of the alimony award in the state court. Swate argues that he is now precluded from seeking a modification in state court because the Post Divorce Final Judgment extinguished the Agreement Incident to Divorce. Hartwell responds that Swate had the opportunity to present evidence as to the amount the state court should award in "future" alimony and the opportunity to appeal the Post Divorce Final Judgment on grounds that it was not supported by the evidence. Swate replies that an appeal of the reasonableness of the award would have been futile because the award was not excessive from the standpoint of a jury verdict in a breach of contract action in state court. According to Swate the bankruptcy court is the proper forum in which to litigate the reasonableness of the alimony award.

Swate's argument fails for the reasons that a similar argument failed in *Forsdick v. Turgeon:*

> [T]he husband suggests that the federal court should look to changed conditions where modification of the award at issue would be unavailable in state court, as he argues is the case here. It is true that some courts that have declined to examine changed circumstances have pointed to the availability of a state modification procedure as one factor in their decision. *See, e.g., Harrell,* 754 F.2d at 907 n. 8. None, however, has found that particular consideration to be decisive, and we question even its relevance, because the decision not to make modification available to the obligated spouse reflects a state-made policy decision in the area of domestic relations, an area into which we are loath to intrude. *Cf. Simms v. Simms,* 175 U.S. 162, 167, 20 S.Ct. 58, 60, 44 L.Ed. 115 (1899)("[T]he whole

6

subject of the domestic relations of husband and wife ... belongs to the laws of the state."). 812 F.2d at 804.[4]

2. *The proper characterization of the damage award*

Swate argues that the character of the alimony award was changed to a dischargeable debt because it was reduced to a specific, non-modifiable amount no longer terminable on Hartwell's death and because it includes non-alimony "incidental and conse-quential damages" for anticipatory breach of contract. The first bankruptcy court found that all past, present, and future alimony in the Agreement Incident to Divorce was in the nature of nondischargeable alimony under federal bankruptcy law. The only event that transpired between the first and second bankruptcy proceedings was the Post Divorce Final Judgment, which reduced the past, present, and future alimony obligations in the Agreement Incident to Divorce to a single lump-sum award. The Post Divorce Final Judgment was based on the same right to payments determined to be alimony in the first bankruptcy proceeding. The dischargeability of a debt is determined by the "substance" of the liability rather than its form. *In re Dennis,* 25 F.3d 274, 277-79 (5th Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 732, 130 L.Ed.2d 636 (1995). The nature of a claim underlying the debt determines its dischargeability. *See In re Wright,* 584 F.2d 83, 84 (5th Cir.1978). Because the nature of Swate's obligations created by the Agreement Incident to Divorce and later merged into the Post Divorce Final Judgment was determined in the first bankruptcy proceeding, Swate is barred from relitigating the issue in the second bankruptcy proceeding.

The parties cite only one case that has addressed the issue of dischargeability of future alimony reduced to a judgment. In *In re Alexander,* 92 B.R. 667, 669-70 (Bankr.N.D.Tex.1988), a husband and wife signed an "Agreement Incident to Divorce" providing for contractual alimony payments of $1,000 a month for twelve months beginning on December 15, 1985. After the husband failed to make the payments for February, March, April, and May of 1986, the wife filed suit for

---

[4]The Supreme Court rejected a similar argument under an earlier version of the bankruptcy code in *Wetmore v. Markoe*, 196 U.S. at 72-74, 75-77, 25 S.Ct. at 174, 175-76.

breach of contract in May of 1986. A state court rendered summary judgment in favor of the wife for $10,630.46, including $4,000 in alimony arrearage, $6,000 in future alimony payments due, and $630.46 in attorney's fees and costs. The husband later filed for bankruptcy, and the wife argued that the debt under the alimony agreement was nondischargeable. The husband responded that once the debt was reduced to final judgment it lost its character as alimony and became a debt dischargeable in bankruptcy. The bankruptcy court concluded that the debt was in the nature of nondischargeable alimony. The court rejected the husband's argument, ruling that "[m]erger into a subsequent judgment does not cause a judgment for alimony to lose its nondischargeable character. The subsequent judgment remains unaffected by a discharge so long as the original decree for alimony remains in full force and effect." *Id.*

Swate argues that *In re Alexander* is distinguishable because the Agreement Incident to Divorce here is no longer "in full force and effect," having merged into the Post Divorce Final Judgment. Hartwell can no longer sue to enforce alimony under the Agreement Incident to Divorce, and Swate can no longer seek modification whenever changed circumstances might occur. Because the underlying decree for alimony was extinguished, Swate argues that the debt is now dischargeable under the "inverse rationale" of *In re Alexander.* It is unclear, however, how the agreement incident to divorce could have remained in full force and effect in *In re Alexander* since the debt, including all future alimony obligations, had been reduced to a final judgment. Furthermore, althougon cases cited in 3 *Collier On Bankruptcy* ¶ 523.15, at 523-101, in support of the proposition that an original decree for alimony must remain "in full force and effect" for an alimony award to remain nondischargeable, none of the cited cases discussed that proposition. *See Ross v. Keith,* 238 A.D. 640, 265 N.Y.S. 246 (1933); *Matter of Avery,* 114 F.2d 768 (6th Cir.1940); *Application of Ritchey,* 261 A.D. 872, 24 N.Y.S.2d 816 (1941), *aff'd,* 287 N.Y. 784, 40 N.E.2d 648 (1942).

Citing *In re Chapman,* 20 B.R. 810, 814 (Bankr.E.D.Va.1982), Swate also argues that the entire award is no longer alimony but is in the nature of a compromise dischargeable under federal bankruptcy law. He contends that because "the entire award represents unknown additional,

8

non-alimony damages and the liquidation of disputed variables (CPI rate, discount rate, life expectancy) into a finite sum ... the award is in the nature of a compromise ... initiated by [Hartwell], and the new debt became dis-chargeable."

In *In re Chapman* the husband and wife entered into two separation agreements before obtaining their divorce. In the first agreement they provided for child support and alimony. They later entered into a second agreement in which they settled a dispute about arrearage for child and spousal support payments, agreeing that the husband owed the wife $3,000, and the wife relinquished all claims for future alimony. When the husband filed for bankruptcy the wife challenged the dischargeability of the $3,000 under 11 U.S.C. § 523(a)(5). Concluding that "[a]limony and past due support payments for children constitute a debt of a husband to his former wife which may be compromised or settled," *id.* at 814, the bankruptcy court ruled that the wife "exercised her right to settle her claims against [the husband] by private agreement and thereby waived all of her claims for alimony." *Id.* at 813. *Chapman* is distinguishable, however, because Hartwell did not settle her claims against Swate by voluntary compromise.

B. Collateral Estoppel

Collateral estoppel is appropriate if (1) the issue at stake is identical to the one involved in the prior action, (2) the issue was actually litigated, and (3) the issue was necessary to support judgment in the prior action. *RecoverEdge L.P. v. Pentecost,* 44 F.3d 1284, 1290 (5th Cir.1995); *Matter of Davis,* 3 F.3d 113, 114 (5th Cir.1993). "Collateral estoppel does not preclude litigation of an issue unless both the facts and the legal standard used to assess them are the same in both proceedings." *Copeland v. Merrill Lynch & Co., Inc.,* 47 F.3d 1415, 1422 (5th Cir.1995).

Swate argues that the district court erroneously granted judgment based on collateral estoppel because (1) the factual issue was different in the second bankruptcy, (2) special circumstances exist which make collateral estoppel unfair, and (3) the policies underlying federal bankruptcy law required that the second bankruptcy court balance the nondischargeability of alimony with his need for a fresh start.

Swate first argues that the dischargeability of the jury's award of $38,000 in non-alimony

9

"incidental and consequential" damages for anticipatory breach of contract was not litigated in the first bankruptcy proceeding. The first bankruptcy proceeding, Swate argues, involved the determination whether the debt was alimony, while the second bankruptcy proceeding also addressed the dischargeability of additional breach of contract damages that are included in the Post Divorce Final Judgment. We are not persuaded by this argument. Swate is not clear about what such "incidental and consequential damages" might include, and we are not prepared to indulge in his speculation since the jury question that resulted in the $417,654.76 award specifically limited the jury's consideration to damages for "anticipatory breach of the alimony provisions of the agreement incident to divorce."

Reducing alimony obligations to a judgment does not change the substance of the liability for pu.g., Wetmore v. Markoe, 196 U.S. 68, 72, 25 S.Ct. 172, 174, 49 L.Ed. 390 (1904)("The mere fact that a judgment has been rendered does not prevent the court from looking into the proceedings with a view of determining the nature of the liability which has been reduced to judgment."); *In re Dennis,* 25 F.3d 274, 277-79 (5th Cir.1994) (holding that a bankruptcy court must "look beyond the labels" state law gives to an obligation to determine its discharge-ability); *In re Larson,* 169 B.R. at 953 ("[T]he fact that arrearages under a support order are reduced to a money judgment does not alter the nature of the debt from a non-dischargeable support obligation to a dischargeable debt since the underlying character of the liability remains unchanged.") (quotation omitted). The first bankruptcy court looked behind the Agreement Incident to Divorce and determined the nature of the obligations set forth there to be past, present, and future alimony. When the second bankruptcy court inquired into the nature of the debt to determine its dischargeability it looked behind the Post Divorce Final Judgment to determine whether the underlying obligation was in the nature of alimony, maintenance, or support when it was made. Because the final judgment merely reduced to a lump-sum the nondischargeable alimony obligations of the earlier Agreement Incident to Divorce, the issues in both bankruptcy proceedings were the same and Swate is collaterally estopped from relitigating the issue.

Swate next argues that special circumstances make collateral estoppel inappropriate because

10

the alimony award is unreasonably excessive. Although both parties cite *United States v. Shanbaum,* 10 F.3d 305, 311 (5th Cir.1994), which recognized a requirement that there be no "special circumstances" that would render issue preclusion inappropriate or unfair, that requirement does not apply in this case. As the court observed in *Pentecost,*

> [a]lthough some recent decisions list the fairness requirement as a general requirement for the application of issue preclusion, the requirement originated as a limitation on *offensive* collateral estoppel. *See Shanbaum,* 10 F.3d at 311 (citing *Universal Am. Barge [v. J-Chem, Inc.],* 946 F.2d [1131] at 1136 [(5th Cir.1991)] (citing *Parklane Hosiery [v. Shore],* 439 U.S. [322] at 326-32, 99 S.Ct. [645] at 649 [58 L.Ed.2d 552] (1979)(delineating requirements for offensive collateral estoppel))). Offensive collateral estoppel arises when a plaintiff seeks to estop a defendant from relitigating issues that the defendant previously litigated and lost against another plaintiff. *Parklane Hosiery,* 439 U.S. at 329, 99 S.Ct. at 650. This case involves tradi-tional, or mutual estoppel because the relevant parties in the [first proceeding] were the same as the parties in the [second proceeding]. *See id.* at 326-27, 99 S.Ct. at 649 (explaining mutuality requirement for traditional collateral estoppel).

44 F.3d at 1290-91 n. 12. Because Swate and Hartwell were parties to both bankruptcy proceedings, this case involves mutual estoppel and an inquiry into special circumstances is unnecessary for our collateral estoppel analysis. Furthermore, as we concluded in our *res judicata* analysis, the reasonableness of an alimony award is an issue for the state court, not the bankruptcy court.

Finally, Swate argues that collateral estoppel is unavailable because different policies underlay the bankruptcy court's inquiries in the two proceedings. Swate argues that during the first bankruptcy the policy consideration was whether alimony support would be continued for Hartwell. During the second bankruptcy, however, two competing policy considerations were at issue: spousal support and getting a fresh start in bankruptcy. According to Swate, this balancing approach was required because an "excessive" alimony obligation is at odds with the goal of allowing the bankrupt a fresh start. Swate contends that the bankruptcy court improperly failed to balance these competing policies. We are not persuaded by this argument because Congress has already resolved the policy balancing in favor of the spouse receiving alimony by creating the exception to the general rule of discharge. *See Wetmore,* 196 U.S. at 77, 25 S.Ct. at 176; *Forsdick,* 812 F.2d at 803-04; *In re Nelson,* 20 B.R. 1008, 1011 (M.D.Tenn.1982).

### III. *Conclusion*

11

Because we conclude that the district court correctly rendered judgment against Swate on *res judicata* and collateral estoppel grounds, we AFFIRM.

12