**In re Richard OSTING, II, Debtor.**

**Richard Osting, II, Plaintiff,**

v.

**Kay Blockberger, et al., Defendants.**

**No. 05–3190.**

United States Bankruptcy Court, N.D. Ohio.

Nov. 7, 2005.

Steven L. Diller, Van Wert, OH, for plaintiff.

Randy Lee Reeves, Lima, OH, Howard B. Hershman, Toledo, OH, for defendants.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court on the Motion of the Defendants to Dismiss the Complaint of the Plaintiff/Debtor. Subsequent to the filing of their Motion, the Court held a Pretrial conference on the Plaintiff's Complaint, at which time it was determined that before proceeding with the merits of the case, the question of discretionary abstention, as raised in the Defendants' Motion to Dismiss, first needed to be addressed. On this legal issue, the Parties were afforded and then took advantage of the opportunity to submit briefs in support of their respective positions. After reviewing these briefs, as well as the applicable law, the Court, for the reasons set forth *infra*, finds that discretionary abstention is appropriate in this matter. Therefore, the Motion of the Defendants to Dismiss will be Granted.

### FACTS

As collectively drawn from the briefs submitted by the Parties, the following facts constitute those applicable events giving rise to the Defendants' Motion to Dismiss. In accordance with Bankruptcy Rule 7052, this shall constitute this Court's findings of fact and conclusions of law.

The Plaintiff, Richard Osting, and the Defendant, Kay Blockberger, are former husband and wife. In the decree terminating the Parties' marriage, Ms. Blockberger was awarded, as against Mr. Osting, the sum of $94,983.00. The basis for this award was to equalize the distribution of marital assets stemming from the Plaintiff having been awarded sole possession of the Parties' former marital residence and surrounding property. The amount of this award was then reduced to judgment when Mr. Osting failed to have it timely satisfied.

Thereafter, in an effort to satisfy the judgment, a portion of the marital property awarded to Mr. Osting was sold. This transaction was effectuated by a "Master Commissioner," operating under the authority of the state court, who received on Ms. Blockberger's behalf a total of $44,000.00 as the result of the sale. Mr. Osting's marital obligation with the Defendant was then commensurately reduced by this amount. (Doc. No. 10, Ex. B).

Later, however, but prior to the commencement of his bankruptcy case, the Plaintiff filed an action to set aside the state-court ordered transfer of his property. The state court, however, rejected Mr. Osting's arguments, first finding that despite receiving proper notice, no timely objection to the appointment of a "Master Commissioner" for the sale of his property was filed, with the Plaintiff instead waiting to object until after the sale of the property had been concluded. Additionally, the state court rejected the substance of Mr. Osting's objection which rested upon his contention that the sale price of the property, having been derived from the property's appraised value, was less than the actual value of the property, stating:

> Th[is] argument itself is somewhat inconsistent as Mr. Osting implored this Court to accept that appraised value as

the value of the property for all purposes associated with the divorce decree, however, at the time of sale, which occurred within four months after the decree was placed on record, Mr. Osting now objects and asks this Court to believe the sale price is woefully inadequate to appropriately compensate for the real value of the property.

(Doc. No. 10, Ex. D).

In the latter part of the year 2004, the Plaintiff, Richard Osting, filed a petition in this Court for relief under Chapter 13 of the United States Bankruptcy Code. As a part of his proposed plan of reorganization, Mr. Osting set forth that he would seek to:

retain the real estate holdings awarded to him in the divorce with the valuation of the secured claims in the real property, to initiate an adversary proceeding under 11 USC § 547 and § 548 with respect to the filing of a judgment lien by his ex-spouse and transfer of real property to his ex-spouse by the Master Commissioner and to pay sufficient proceeds to the Trustee to complete the terms of the Plan with the ultimate intention of trying to preserve the residence, surrounding real property and park.

(Doc. No. 9, at pg. 2). In accordance with this stated intention, Mr. Osting then commenced the instant adversary proceeding seeking to avoid, as a preferential transfer under § 547 and as a fraudulent transfer under § 548, the judgment lien and subsequent transfer of property accomplished for the benefit of Ms. Blockberger.

## DISCUSSION

■ By way of her Motion to Dismiss, Ms. Blockberger seeks to have this Court invoke the doctrine of abstention as against Mr. Osting's action to avoid the prepetition transfer(s) made in her favor. In a broad sense, the doctrine of abstention permits, or in some instances requires, a federal court to relinquish what would otherwise be a valid exercise of jurisdiction due to overriding principles of federalism, comity, and judicial economy.[1] *Grode v. Mutual Fire, Marine and Inland Insurance Co.*, 8 F.3d 953, 958 (3rd Cir. 1993). Bankruptcy law codifies this doctrine by providing for two types of abstention: discretionary abstention under 28 U.S.C. § 1334(c)(1); and mandatory abstention under 28 U.S.C. § 1334(c)(2).

■ Of the two abstention doctrines available in a bankruptcy proceeding, Ms. Blockberger's Motion to Dismiss relies exclusively on the authority of this Court to discretionarily decline jurisdiction pursuant to paragraph (c)(1) of § 1334. (Doc. No. 10, at pg. 3). This provision provides:

Nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts

---

1. Many different varieties exist: the Colorado River abstention doctrine which requires a federal court to abstain from exercising jurisdiction in certain cases involving duplicative state court litigation. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817–19, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); The Younger abstention doctrine, setting forth the principle that federal courts should not interfere, by way of an injunction or declaration, with state or local criminal and quasi-criminal administrative proceedings, in the absence of extraordinary circumstances. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); The Pullman abstention doctrine providing that federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided. *Railroad Comm'n of Tex. v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941); and the Burford abstention doctrine requiring that federal courts should avoid interfering with issues involving complex and sensitive areas of state policy. *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

When determining whether to employ this section, many different considerations have and may be utilized; and with an eye toward abstention's concern for federalism, a consideration frequently employed in aid of determining the propriety of abstention under § 1334(c)(1) is the extent to which a state-law issue predominates. *See, e.g., In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co.,* 6 F.3d 1184 (7th Cir.1993); *In re Pan American Corp.,* 950 F.2d 839, 846 (2nd Cir.1991). It is against this consideration which Ms. Blockberger concentrates her Motion for Abstention, stating in her brief to the Court: abstention is proper because Mr. Osting "is merely contesting what has already been done by the domestic relations court." (Doc. No. 10, pg. 5).

As put forth by Ms. Blockberger, familial and domestic relations matters, and determinations made by state courts thereunder, have traditionally formed and continue to be an area of law where the federal courts have taken a hands-off approach. In *Ankenbrandt v. Richards,* the Supreme Court of the United States explained:

> [S]tate courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony and child custody decrees. Moreover, as a matter of judicial expertise, federal courts ... [lack] the special proficiency developed by state tribunals over the past century and a half in handling [domestic relations issues].

504 U.S. 689, 704, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). In response, however, Mr. Osting pointed out in his arguments to the Court that the Supreme Court's decision in *Ankenbrandt* is limited in its breadth, with its holding being based upon two matters which are not present here: diversity jurisdiction and "cases involving the issuance of a divorce, alimony, or child custody decree." *Id.* at 704, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468. Yet, while this is true, this does not mean that domestic relations issues which fall outside the orbit of the limited holding in *Ankenbrandt* are per se proper for adjudication in federal court. As the following will explain, in matters involving the interplay between federal jurisdiction and domestic relations, a party will not be permitted to use the federal courts when the prime objective is to achieve a result that could not be obtained in state court.

First, with regards to the *Ankenbrandt* decision itself, courts, although not giving the holding an overtly expansive reading, have not limited it to just "cases involving the issuance of a divorce, alimony, or child custody decree." Instead, it has been held that diversity jurisdiction will be declined where the "matter is inextricably connected with an ongoing domestic relations dispute." *Beliveau v. Beliveau,* 655 F.Supp. 478, 479 (D.Me.1987). A prime example is the Sixth Circuit's decision in *McLaughlin v. Cotner,* where, in following *Ankenbrandt,* the Court found the domestic relations exception to federal-diversity jurisdiction applicable in a breach of contract action where the alleged "contract" was part of a separation agreement incorporated into a divorce decree. 193 F.3d 410 (6th Cir.1999). In coming to this decision, the Court focused on the fact that the breach of contract action was simply an attempt to "disguise the true nature of the action" which was actually one to overturn the decision rendered by the state court. *Id.* at 413.

■ In this same way, even if jurisdiction is technically permissible, discretion will often bend toward finding it proper to decline jurisdiction where the lines become blurred as between a jurisdictionally permissible action with that of a domestic relations matter. Thus, like the above decisions derived from the holding set forth in *Ankenbrandt* (which is really akin to § 1334(c)'s mandatory abstention), it has been held that federal courts should exercise their discretion and refrain from adjudicating a matter when doing so would impermissibly insert themselves into matters involving an ongoing domestic relations dispute. *See, e.g., Swate v. Hartwell (In re Swate)*, 99 F.3d 1282, 1287 (5th Cir.1996) (the decision of whether to modify an award to a spouse under state law reflects a state-made policy decision in the area of domestic relations, an area into which we are loath to intrude). In the bankruptcy context, the Sixth Circuit Court of Appeals succinctly summed up this principle by observing that "the bankruptcy court does not sit as a super-divorce ..." *Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 402 (6th Cir.1998). *See also Caswell v. Lang*, 757 F.2d 608, 610–11 (4th Cir.1985) ("it was not the intent of the new Bankruptcy Code to convert the bankruptcy courts into family or domestic relations courts-courts that would in turn, willy-nilly, modify divorce decrees of state courts ...").

■ While this is anything but a complete list of the cases that have discussed the interplay between federal jurisdiction and that of domestic relations, taken in *pari materia* these decisions illustrate the general loathing and hesitance against federal-court interference in domestic relations matters. Still, interference in domestic relations matters does not alone justify abstention; in many instances bankruptcy law will have the effect of undoing determinations made in state court; this is simply inherent in the nature of bankruptcy law; or for that matter, federal law which, in a conflict, predominates over state law. *See, e.g.*, 11 U.S.C. § 523(a)(15)(A)/(B); U.S.C.A. Const. Art. 6, cl. 2.

In this way, Mr. Osting argues that his purpose in bringing this avoidance action is not to undo the determinations previously made in state court regarding the disposition of his and his wife's former marital property,—although he acknowledges that this would be its practical effect—but is meant to instead benefit his estate, thus benefitting all of his unsecured creditors. In taking this position, Mr. Osting put forth in his brief to the Court that jurisdiction should be exercised by this Court because he is relying "on the statutory relief provided a Debtor under Title 11" for his action, and thus, the avoidance action he filed is "not to 'extend' the divorce proceeding between the parties, but are for the benefit of all the creditor body of the Debtor." (Doc. No. 10, at pg. 4).

■ While not postulated exactly as such, Mr. Osting's argument in supports of jurisdiction brings to the forefront the propriety of abstention in a matter which is a "core proceeding," with Mr. Osting's avoidance being but one category of this type of action. 28 U.S.C. § 157(b)(2)(F)/(H). "Core proceedings" are at the forefront of bankruptcy jurisdiction as they "invokes a substantive right provided by title 11 or if it is a procedure that, by its nature, could arise only in the context of a bankruptcy case." *Adams v. Hartconn Assocs., Inc. (In re Adams)*, 212 B.R. 703, 715 (Bankr. D.Mass.1997). In the context or discretionary abstention under § 1334(c)(1) this is especially relevant as the abstention from the exercise of federal jurisdiction is the exception, rather than the rule. *Ankenbrandt*, 504 U.S. at 705, 112 S.Ct. at

2215. In the words of the Supreme Court, "abstention rarely should be invoked, because the federal courts have a virtually unflagging obligation to exercise the jurisdiction given them." *Id., quoting Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976).

■ At the same time, merely because a bankruptcy objective is at stake, does not obligate this Court to hear the action; discretionary abstention is still a viable option. Briefly, the reason for this may be explained by the interplay between 28 U.S.C. §§ 157(b) and 1334. Section 157(b)(2) sets forth the types of actions which are "core proceedings." But § 157(b)(2) does not confer bankruptcy jurisdiction; that is instead provided for in § 1334(c)(1), which sets forth that bankruptcy jurisdiction extends to three types of matters: those that arise "under" "in" or are "related to a case under title 11." 28 U.S.C. § 1334(b). Of these, the first two—those arising "under" or "in"—fall into the category of those proceedings which are deemed to the "core" under § 157(b). Yet, in providing for discretionary abstention under paragraph (c) of § 1334, no such differentiation is made, with the statute providing that it applies to not only matters that are "related to a case under title 11" but also to the "core" matters which arise "under" or "in" a case under title 11. Thus, simply because a bankruptcy objective is at stake, by virtue of it being a "core proceeding," does not make discretionary abstention unavailable; rather, § 1334(c)(1) makes it explicitly permissible.

■ In putting now the above pieces of the puzzle together, the Court's decision on abstention necessarily comes down to reconciling two opposed policy considerations: The need to decide a matter for which this Court was designed to adjudicate—specifically, an action to set aside a prepetition transfer of property. Versus, the need not to needlessly trample on a decision made by a state court on a legal matter which has traditionally fallen within its exclusive area of jurisdiction. As in any situation where a court is confronted with inapposite, but equally important policy considerations, logic dictates that the merits of the matter be determined with reference to which policy consideration, in the context of its overall importance, will be advanced the furthest. Necessarily, this is a case-specific inquiry, hinging on both the particular facts of the case and the policy considerations presented. And in light of those facts and policy objectives herein discussed, this aim can be best accomplished by balancing the extent to which Mr. Osting's successful prosecution of his avoidance action would promote the goals of Title 11 against the scope to which the adjudication of that matter would excessively interjects itself in or impede in his and Ms. Blockberger's domestic relations matter. *See In re Dennis,* 218 B.R. 52, 55 (Bankr.E.D.Ark.1997) (employing a similar balancing test in a lien avoidance/abstention matter).

■ Beginning with the former, a primary aim of bankruptcy law is to maximize the value of a debtor's estate so as to effectuate, on an equitable basis for all those creditors similarly situated, the available assets for distribution. One way this is accomplished is through the avoidance of prepetition transfers of property which, if allowed to stand, would allow a certain class of creditors to receive a disproportionate share of the debtor's distributable assets; it is the fulfillment of this policy objective which forms the heart of Mr. Osting's position that he should be allowed to proceed with his avoidance action.

Yet, as policy objectives go, the need to maximize the value of a debtor's estate does not trump and would seem to give way when it would come at the expense of avoiding a lien awarded to an ex-spouse. The Supreme Court's decision in *Farrey v. Sanderfoot* demonstrates. 500 U.S. 291, 301 111 S.Ct. 1825, 1831, 114 L.Ed.2d 337 (1991). As in this matter, *Sanderfoot* involved the propriety of avoiding a lien held by an ex-spouse under bankruptcy law. In finding such an action inappropriate from a policy standpoint it was stated:

> the divorce court awarded the lien to secure an obligation the court imposed on the husband in exchange for the court's simultaneous award of the wife's homestead interest to the husband. We agree ... that to permit a debtor in these circumstances to use the Code to deprive a spouse of this protection would neither follow the language of the statute nor serve the main goal it was designed to address.

*Id.,* 500 U.S. at 301, 111 S.Ct. at 1831.

Additionally, beyond simply the lien avoidance issue against an ex-spouse, the circumstances presented in *Sanderfoot* have other parallels to that here. As in this matter, the lien to be avoided in *Sanderfoot* had been awarded by the state divorce court to secure payments owed by the debtor to his ex-spouse. Also similar, the function of these payments was to equalize the distribution of marital property when accounting for the debtor having been awarded sole possession of the parties' former marital residence.

Albeit, the decision in *Sanderfoot* did not involve the application of the abstention doctrine. Nor did it involve the type of avoidance action brought by Mr. Osting, with the debtor in *Sanderfoot* relying on § 522(f) [2] for lien avoidance which generally provides that a lien may be avoided if recognizing the lien would impair an exemption of the debtor's. Yet, the principle enunciated in *Sanderfoot,* regarding the general incompatibility of using bankruptcy law to avoid an ex-spouse's lien, has not been confined to its facts. Coming now full circle, in the context of the abstention doctrine, it has been logically held to stand for the position that lien avoidance is not proper when its sole purpose is to undo a state court determination regarding the relationship between the former spouses, a concern which comes to the forefront in this matter. *Branham v. Davis (In re Branham),* 149 B.R. 406, 408–09 (Bankr. W.D.Va.1992), *citing to Robbins v. Robbins,* 964 F.2d 342 (4th Cir.1992).

As previously mentioned, Mr. Osting's avoidance action, if successful, will have the effect of entirely negating those decisions made in state court regarding the disposition of the Parties' marital property. But especially problematic is that Mr. Osting's avoidance action appears to have been brought for just one purpose: to undo the decision of the state court regarding the disposition of the Parties' marital property. In this way, what is particularly noticeable is that Mr. Osting only filed for bankruptcy, then bringing his avoidance action, after he had vigorously, but unsuccessfully sought to have the

**2.** In *Sanderfoot,* the debtor unsuccessfully sought to avoid a lien held by his ex-spouse against the parties' former marital residence. In denying the debtor the relief sought, the Court relied on this two-step reasoning. First, under applicable state law, the divorce decree extinguished the preexisting property interests of the two parties, bringing then into

existence a new property interests in the place of the old. Second, since § 522(f) only allows a debtor to avoid the "fixing" of a lien in which the debtor already maintains a property interest, there would exist no lien to avoid, with the lien and the debtor's interest in the encumbered property arising simultaneously.

state-court reverse its decision regarding the transfer of his property to Ms. Blockberger. Effectively then, with the state court's decision being *res judicata*, Mr. Osting seeks to impermissibly cast this Court in the role of an appellate court.

At this point then, two overall points cause discretion to strongly bend toward abstention under § 1334(c)(1). First, Mr. Osting's avoidance action (and for that matter his bankruptcy case) apparently has just one aim in mind: to achieve what he could not achieve in domestic relations court. Second, in accord with *Sanderfoot*, a case which has many parallels to that here, Mr. Osting's avoidance action is generally incompatible with the deference afforded to domestic relations matters. But even disregarding these two points, there still exists an inherent weakness with Mr. Osting's position: his avoidance action, as will be explained, does not rest on solid legal grounds. In a word, it is speculative. Thus, little weight can be accorded to Mr. Osting's position that his action will further the objectives of the Bankruptcy Code.

 Mr. Osting's avoidance action is brought pursuant § 547 and § 548, which respectively permit the avoidance of prepetition transfers that were made either preferentially or fraudulently. The purpose of these sections is to ensure that the debtor's estate is not unfairly diminished to the detriment of all creditors during the time period leading up to bankruptcy. *Accord Bear, Stearns Sec. Corp. v. Gredd*, 275 B.R. 190, 194 (S.D.N.Y.2002). Beside this common goal, these sections also have another thing in common: both name only

the "trustee"—and not the debtor—as the party with the authority to bring an action under this section. Specifically, both sections set forth this identical language: "the *trustee* may avoid any transfer of an interest of the debtor in property." (emphasis added).

Under those other Chapters of the Bankruptcy Code which regulate the reorganization of a debtor's debt, this does not create a problem; in both a Chapter 11 and 12 bankruptcy case, the authority to exercise a trustee's avoiding powers is specifically bestowed upon the debtor. 11 U.S.C. § 1107(a); § 1203 (but with some limited exceptions). But this authority is noticeably lacking from Chapter 13's comparable provision which lacks any specific authorization for the debtor to exercise a trustee's avoiding powers. 11 U.S.C. § 1303.[3] This has lead a number of courts, in what also appears to be the emerging view, to conclude that a Chapter 13 debtor lacks standing to exercise a trustee's avoiding powers. *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292 (5th Cir.1997) (providing a comprehensive analysis of the issue and case law).

Notwithstanding, some courts have allowed a Chapter 13 debtor to exercise a trustee's avoiding powers.[4] Although the reasoning and circumstances of these decisions vary, a common theme has been appropriately observed: "The bankruptcy courts have been reluctant to allow Chapter 13 debtors to use recovery or avoidance powers to advantage only the debtor." 1 Keith M. Lundin, *Chapter 13 Bankruptcy*, § 53–18 (3rd 2000).

---

3. This section provides:
 Subject to any limitations on a trustee under this chapter, the debtor shall have, exclusive of the trustee, the rights and powers of a trustee under sections 363(b), 363(d), 363(e), 363(f), and 363(1), of this title.

4. *See Thacker v. United Cos. Lending Corp.*, 256 B.R. 724 (W.D.Ky.2000); *In re Freeman*, 72 B.R. 850 (Bankr.E.D.Va.1987); *In re Ottaviano*, 68 B.R. 238 (Bankr.D.Conn.1986); *In re Einoder*, 55 B.R. 319 (Bankr.N.D.Ill.1985).

In contrast, the real benefit of Mr. Osting's avoidance action will likely befall just him personally, not his creditors. Most telling in this regard, it does not appear that Mr. Osting seeks to avoid the prepetition transfer to Ms. Blockberger so as to effectuate any immediate disbursement to his unsecured creditors, such as through an immediate sale of his property. Rather, it would appear that Mr. Osting simply intends to retain the property for his own use, treating then Ms. Blockberger's claim as unsecured. Specifically it is noted that in his proposed plan of reorganization, Mr. Osting put forth that it was his "ultimate intention of trying to preserve the residence, surrounding real property and park."

Albeit, avoiding Ms. Blockberger's interest in the property could produce a stream of income, enabling Mr. Osting to pay his unsecured creditors. But this is purely speculative, and does not outweigh the disruption it would cause. Similarly problematic, because Ms. Blockberger's unsecured claim is not likely in the nature of support, but simply a property settlement, it would be subject to the broad discharge of § 1328 to the extent that it was not paid in full.

In addition, even assuming that this Court had been inclined to follow those decisions which allow a Chapter 13 debtor to fully exercise a trustee's avoiding powers, the efficacy of this position has been recently placed in serious doubt as a result of the Supreme Court's recent interpretation of another section under Chapter 5 of the Bankruptcy Code: § 506(c).

Section 506(c) of the Bankruptcy Code allows, in certain limited instances, the collateral for a secured debt to be held liable for expenses incurred by the estate. And like §§ 547 and 548, it expressly limits its applicability to a bankruptcy trustee, providing:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim, ....

But when presented with the issue of whether another party,—in that instance, an administrative claimant,—could use this section to seek recovery, the Supreme Court declined, holding that the statute meant exactly what is said: it is only available to the trustee. *Hartford Underwriters Ins. Co. v. Union Planters Bank,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000). In coming to this conclusion, the Court employed a line of reasoning which could just as easily be applied in this matter: (1) a statute designating a particular party empowered to act is "the least appropriate in which to presume nonexclusivity;" (2) the trustee has "a unique role in bankruptcy proceedings" making it more plausible "Congress would provide a power to [the trustee] and not to others;" and (3) had Congress intended the provision to be broader, it could have simply done so. *Hartford Underwriters,* 530 U.S. at 6–7, 120 S.Ct. 1942.

Further supporting the position that a Chapter 13 debtor is not conferred with the authority to directly exercise a trustee's avoiding is the existence of § 522(h); this section permits a debtor to avoid under both § 547 and § 548 an involuntary transfer of exempt property if a trustee could do so, but has not so attempted.[5]

---

5. Section 522(h) provides that:
 the debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided such transfer, if—

Section 522(h) is most often applied by Chapter 7 debtors. But being contained in Chapter 5, it is also applicable to all Chapters of the Bankruptcy Code, 11 U.S.C. § 103(a). Yet, this facet of the provision would be rendered superfluous if, as Mr. Osting suggest, a Chapter 13 debtor was conferred with all of the powers of a trustee. Because with § 522(h) limited in scope, no Chapter 13 debtor would need to resort to this provision if they were already conferred with the full extent of a trustee's avoiding powers. (And as already mentioned, its applicability in both Chapter 11 and 12 is not needed as they each have specific provisions conferring upon the debtor a trustee's avoiding powers.). *Realty Portfolio, Inc. v. Hamilton (In re Hamilton)*, 125 F.3d 292, 297 (5th Cir.1997).

Furthermore, to the extent that Mr. Osting may avail himself to the use of § 522(h) in this matter, the statute's utilization as a device to completely avoid the prepetition transfer made to Ms. Blockberger is not permitted. Section 522(h) does not contemplate the full avoidance of a transfer, but rather only permits a debtor to exercise a trustee's avoiding powers "to the extent that the debtor could have exempted such property..." Thus even if available to Mr. Osting, he would only be entitled to avoid the prepetition transfer made to Ms. Osting in the amount of $5,000.00, the amount of which represents his allowable homestead exemption under O.R.C. § 2329.66(A)(1)(b). And again, given the potential disruption that this would cause in the Parties' fully litigated domestic relations matter, this cost is simply not worth the nominal gain.

(1) such transfer is avoidable by the trustee under section 544, 545, 547, 548, 549, or 724(a) of this title or recoverable by the trustee under section 553 of this title; and

For all these reasons then, besides Mr. Osting's avoidance action going in contrast to bankruptcy objectives, it would appear that, as a strict legal matter, he is not conferred with the authority to directly exercise the trustee's avoiding powers under §§ 547 and 548. Moreover, to the extent that it may be exercised indirectly through § 522(h), the benefit to him is minimal when set against the disruption that it would cause Ms. Blockberger. On all these fronts, therefore, Mr. Osting's ability to maintain his avoidance action simply does not appreciably further the goals of Title 11 of the United States Code. As such, based upon the deference accorded to domestic relations matters, the weight of the policy objectives before the Court bend heavily toward discretionarily abstaining in accordance with § 1334(c)(1).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

***ORDERED*** that the Motion of the Defendant, Kay Blockberger, for abstention, be, and is hereby, GRANTED.

It is ***FURTHER ORDERED*** that, pursuant to 28 U.S.C. § 1334(c)(1), this matter, be, and is hereby, DISMISSED.

(2) the trustee does not attempt to avoid such transfer.