United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 5, 2006**

**Charles R. Fulbruge III**
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 04-31113

---

IN THE MATTER OF: LEON ALAN EGLESTON,

                                        Debtor.

VICKI MARIE EGLESTON,

                            Appellant-Cross-Appellee,

         versus

LEON ALAN EGLESTON,

                            Appellee-Cross-Appellant.

---

Appeals from the United States District Court
for the Western District of Louisiana

---

Before GARWOOD, CLEMENT and PRADO, Circuit Judges.

GARWOOD, Circuit Judge:

     Vicki Marie Egleston appeals the summary judgment in her adversary proceeding to except from discharge various Pennsylvania state court judgments rendered against her ex-husband, a Chapter 7 debtor, Leon Alan Egleston.  We affirm in part, reverse in part, and remand.

**Facts and Proceedings Below**

The ceaseless litigation following the 1993 divorce of Vicki Marie Egleston (Vicki) and Leon Alan Egleston (Alan) has once again reached this court.  On September 14, 1993, the Court of Common Pleas of Westmoreland County, Pennsylvania (state court) entered a consent order to enforce a marital settlement agreement (settlement order) between the Eglestons.  The settlement order provided, *inter alia*, for the payment of alimony and the distribution of property.[1]

---

[1]Specifically, the settlement order provided, in pertinent part:

"8.  Plaintiff/husband has entered into an agreement to sell his medical practice . . . to Lee Harmatz, M.D., and Associates for a total consideration of Seventy-seven Thousand Nine Hundred ($77,900.00) Dollars.  The Sales Agreement shall be attached as Exhibit A within 7 days.  Under the terms of said agreement, the sum of Thirty-seven Thousand Five Hundred ($37,500.00) Dollars to be paid at the signing of the agreement, shall be paid to the defendant/wife as equitable distribution, and the balance of cash proceeds in the amount of Thirty Thousand ($30,000.00) Dollars shall be paid to defendant/wife as equitable distribution as scheduled in the agreement, Five Thousand ($5,000.00) Dollars per month in six consecutive months, commencing January 1, 1994.  The plaintiff/husband shall perform any and all terms, conditions and covenants of said agreement to insure payment to the defendant/wife.  In the event of a default by the plaintiff/husband, the plaintiff/husband shall pay to the defendant/wife the sum of Five Thousand ($5,000.00) Dollars per month in the event payment is not made by the buyers . . . .
"9.  Commencing October 1, 1993, plaintiff/husband shall pay alimony to the defendant/wife the sum of Four Thousand ($4,000.00) Dollars per month, said alimony shall temporarily cease on December 31, 1993, and defendant/wife shall begin to receive payments under the Agreement of Sale mentioned in paragraph 8 above.  Commencing May 1, 1994, plaintiff/husband shall pay alimony to defendant/wife in the sum of Four Thousand ($4,000.00) Dollars per month, said payment shall continue for One Hundred Twenty-Eight (128) consecutive months, said payments being due on the 1st day of each month.  The payment of alimony is non-modifiable and unconditional except it shall terminate upon the death of defendant/wife, but not upon her marriage or cohabitation. . . .  The parties agree that these payments are alimony as the terms are defined under the Internal Revenue Code . . . .  Any arrearages due on [the 1992] alimony pendente lite order existing through September 14, 1993 are cancelled."
*Egleston v. Egleston*, State Court Order of Sep. 14, 1993 (unpublished).

Another provision of the settlement order, unfortunately not relevant in this case, is the following: "The parties shall not molest or interfere with each other; nor shall either of them malign or slander the other in any way, or in any way injure his or her reputation."  *Id.*

Six months after the settlement order, on March 14, 1994, Alan filed a Chapter 7 bankruptcy petition in the Western District of Louisiana. In response, Vicki moved to lift the automatic stay as to her claims for alimony and she filed an adversary proceeding under 11 U.S.C. § 523(a)(5) to contest the discharge of certain obligations under the settlement order. On July 18, 1994 the automatic stay was lifted only for Vicki's claims for the alimony payments described in paragraph nine of the settlement order. On September 27, 1994, Vicki obtained a state court order that adjudged Alan in contempt for failure to comply with the settlement order and directed him to pay $51,400 in alimony arrearages and $3,000 in attorneys' fees.

Meanwhile, in her adversary proceeding in the bankruptcy court, Vicki argued that the payments provided for in paragraph eight of the settlement order should also be excepted from Alan's discharge. The eventual result of that proceeding — after an appeal that provided the first opportunity for this court to address the Egleston dispute, *see Egleston v. Egleston*, No. 95-30641 (5th Cir. Feb. 5, 1996) (unpublished) — was the bankruptcy court's judgment on April 16, 1996, that 136 monthly payments of $4,000 were excepted from Alan's discharge as alimony under section 523(a)(5). These payments included all 131 of the payments provided for in paragraph nine of the settlement order, *see supra* (*note 1*), and an additional five payments considered to be alimony

3

under the provisions of paragraph eight.[2]  The balance of payments under paragraph eight did not constitute alimony, and therefore Vicki's claim to that amount was discharged.

Alan did not always timely pay his non-discharged monthly alimony obligations of $4,000, and Vicki subsequently relied on Pennsylvania state court contempt proceedings to force payment.[3]

---

[2]The bankruptcy court's original judgment in the adversary proceeding, on December 14, 1994, had excepted from discharge only the 131 payments of $4,000 described in paragraph nine of the settlement order.  Because there was a gap in the payment schedule provided by paragraph nine, however, and because some of the payments described in paragraph eight were the only payments Vicki would receive during this gap, we held that five monthly payments of $4,000 should be carved out of the paragraph eight obligations and excepted from discharge in addition to the original 131 alimony payments.  *Egleston v. Egleston*, No. 95-30641 (5th Cir. Feb. 5, 1996) (unpublished).

[3]Pennsylvania law provides the state court with many options to enforce an alimony obligation:

> "If at any time a party is in arrears in the payment of alimony or alimony pendente lite as provided for in sections 3701 (relating to alimony) and 3702 (relating to alimony pendente lite, counsel fees and expenses), the court may, after hearing, in order to effect payment of the arrearages:
> (1) Enter judgment.
> (2) Authorize the taking and seizure of the goods and chattels and the collection of the rents and profits of the real estate of the party.
> (3) Attach no more than 50% of the wages of the party.
> (4) Award interest on unpaid installments.
> (5) Require security to insure future payments.
> (6) Issue attachment proceedings, directed to the sheriff or other proper officer of the county, directing that the person named as having failed to comply with the court order be brought before the court at such time as the court may direct. If the court finds, after hearing, that the named person willfully failed to comply with the court order, it may declare the person in civil contempt of court and in its discretion make an appropriate order, including, but not limited to, commitment of the person to prison for a period not to exceed six months.
> (7) Award counsel fees and costs."
> 23 PA. CONS. STAT. ANN. § 3703 (West 2001).

In addition, Pennsylvania law provides the following punishment for civil contempt for noncompliance with a support order:

> "(a) **General rule.**--A person who willfully fails to comply with any order under this chapter, . . . may, as prescribed by general rule, be adjudged in contempt. Contempt shall be punishable by any one or more of the following:
> (1) Imprisonment for a period not to exceed six months.

A review of the docket entries for the Egleston divorce case reveals various state court efforts to ensure that Alan met his alimony obligations, including orders, wage attachments, and even imprisonment for contempt. Alan generally found himself on the losing side of the state court's judgments. Specifically, on January 16, 1998, the state court again adjudged Alan in contempt of court and noted that Vicki "lost the marital home through mortgage foreclosure" due to Alan's failure to pay alimony "for a considerable period of time." The court was unable to determine Vicki's damages at that time and so it granted leave for the parties to present additional testimony of losses or credits. The court also noted that Alan had failed to pay to Vicki the sum of $77,900 for the sale of his medical practice pursuant to paragraph eight of the settlement order.[4] The state court was apparently not informed that the only obligation under paragraph eight that was not discharged by Alan's bankruptcy was the sum of $20,000 in the form of five additional monthly alimony payments of $4,000. As a result, the state court ordered Alan to pay $77,900 with interest from January 1, 1994. Then on June 18, 1998, following a hearing

(2) A fine not to exceed $1,000.
(3) Probation for a period not to exceed one year.
(b) **Condition for release**.--An order committing a defendant to jail under this section shall specify the condition the fulfillment of which will result in the release of the obligor."
23 PA.CONS. STAT. ANN. § 4345 (West 2001).

[4]Paragraph eight of the settlement order mentions the expected sale price of $77,900, but it provides for payments to Vicki of only $67,500. Because all but $20,000 of the paragraph eight obligation was discharged in bankruptcy, the $10,400 difference is irrelevant.

that Alan did not attend and at which he presented no evidence,[5] the state court again adjudged Alan in contempt of court and ordered Alan, *inter alia*, to pay to Vicki the following sums: (a) $42,275 in attorneys' fees that Vicki incurred in attempts to enforce the settlement order, (b) $65,000 for Vicki's lost equity in real property, (c) $20,000 for Vicki's lost equity in her automobile that was repossessed, (d) $10,000 for the value of Vicki's lost personal property (some apparently taken by Alan and some sold by Vicki when Alan's alimony payments were not made), and (e) $6,000 for Vicki's costs associated with traveling to Louisiana to defend the property settlement agreement in Alan's bankruptcy. Although the litigation has continued to the present day, resulting in many additional orders from the state court,[6] the current dispute primarily involves the bankruptcy court's treatment of the above-described amounts first awarded by the state court in January and June of 1998.

On October 12, 2001, at Alan's request, the bankruptcy court reopened Alan's 1994 bankruptcy, and, on November 28, 2001, Alan filed an adversary proceeding alleging that Vicki violated the injunction of 11 U.S.C. § 524(a)(2) by bringing state court

---

[5]This fact was noted by the state court in its order of June 18, 1998, along with the fact that Alan "acknowledged that he was fully aware of the time and date of the hearing."

[6]For example, an April 16, 1999 state court order that again found Alan in contempt resulted in Alan's imprisonment in the Westmoreland County prison for about five months in 1999.

proceedings to collect Alan's discharged debts. Alan asked the bankruptcy court to (1) void portions of the state court judgments, (2) enjoin Vicki from future attempts to collect the now-discharged obligations of the settlement agreement, (3) find Vicki in contempt of court, and (4) award damages and attorneys' fees. On June 4, 2002, Alan and his current wife, Sharon, filed a new bankruptcy petition, which was consolidated with Alan's 1994 bankruptcy. On September 6, 2002, Vicki filed an adversary proceeding in the new case, claiming that the state court judgments against Alan are not dischargeable. Alan's adversary proceeding of November 28, 2001 and Vicki's adversary proceeding of September 6, 2002 were consolidated and Alan moved for summary judgment on December 12, 2003.

Meanwhile, on September 17, 2003, the state court issued an order that finally acknowledged the 1994 bankruptcy and its effect on the earlier state court judgments.[7] This order (1) set Alan's alimony arrearage at $96,405.15; (2) concluded that the January 16, 1998 state court order to Alan to pay Vicki the sum of $77,900 was related to the settlement agreement's equitable distribution provisions that had been discharged in bankruptcy; (3) recognized that the judgment for interest accrued on the discharged equitable distribution obligation was similarly defective; and (4) noted that

_____

[7]As the state court noted, the parties failed to make the original bankruptcy proceedings part of the state court record. We agree with the state court's comment that much of the frustration and aggravation could have been avoided had the parties done so.

the bankruptcy court would have to determine the validity of the other components of the state court judgment of June 18, 1998.

On May 17, 2004, the bankruptcy court granted Alan's motion and ruled that Alan's prior bankruptcy discharge caused all of Vicki's claims, except for the claim for non-discharged alimony, to be barred by *res judicata*. The bankruptcy court set $36,405.15 as the balance remaining on Alan's non-discharged alimony, enjoined the parties from taking actions contrary to its ruling, annulled the state court orders to the extent they are contrary to the bankruptcy court's Reasons for Decision, and dismissed with prejudice all of the parties' remaining claims, including Alan's claim for the damages caused by Vicki's contempt of court.

Vicki appealed to the district court, which affirmed the bankruptcy court's judgment. Specifically, the district court concluded that Alan's obligation to pay any of the proceeds from the sale of the medical practice was discharged in the 1994 bankruptcy and Vicki cannot revive her claim to these proceeds. This conclusion dispensed with the amounts awarded in the state court's January 16, 1998 order. In its analysis of the amounts awarded by the state court on June 18, 1998, the district court considered the award for compensatory damages separately from the award for attorneys' fees. For the compensatory damages, the district court held that the bankruptcy court's conclusion that this portion of the award was barred by *res judicata* was a

8

conclusion of fact that was not clearly erroneous. For the attorneys' fees, however, the district court explicitly declined to adopt the bankruptcy court's reasoning and instead affirmed the decision to annul the attorneys' fees by applying the equitable doctrine of unclean hands. In discussing Vicki's "unclean hands," the district court noted that Vicki's actions in state court "went far beyond an attempt to recover alimony and constituted an attempt to re-litigate issues that were finalized in the 1994 bankruptcy."

Alan also appealed to the district court, attempting to revive his claim for damages caused by Vicki's violation of the permanent injunction of section 524(a)(2). The district court affirmed the dismissal with prejudice of this claim, noting that Alan provided no support for his claim for damages and also noting that, because Vicki's state-court awards were annulled, Alan's only remedy is the injunctive relief provided by the bankruptcy court.

Vicki appeals from the judgment of the district court.[8]

**Discussion**

*I. Jurisdiction and Standard of Review*

---

[8]We note that Alan filed a notice of cross-appeal to this court, and he also sent in a brief arguing that his motion for summary judgment in the consolidated adversary proceedings should not have resulted in the dismissal of his claim for damages against Vicki. This brief was premature, however, and, after notice from the Fifth Circuit Clerk, Alan filed a brief that did not raise this issue. Therefore, as this issue is not briefed on appeal, it is waived. *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070, 1074 n.5 (5th Cir. 1997).

Our jurisdiction to hear this appeal from the district court's judgment affirming the bankruptcy court is provided under 28 U.S.C. § 158(d).

We review "the grant of summary judgment *de novo*, applying the same standards as the district court. Summary judgment is proper only where, viewing the evidence in the light most favorable to the nonmoving party, the court determines that there is no genuine issue of material fact and judgment is proper as a matter of law." *In re Intelogic Trace, Inc.*, 200 F.3d 382, 386 (5th Cir. 2000) (citation omitted); FED.R.CIV.P. 56(c).

If we disagree with the lower courts' reasons for granting summary judgment, we can nonetheless affirm if other appropriate grounds appear in the record. *Thompson v. Georgia Pacific Corp.*, 993 F.2d 1166, 1167-68 (5th Cir. 1993).

## II. *The Bankruptcy Court's Judgment and Section 524(a)(1)*

The bankruptcy court's judgment purports to annul any and all orders of the state court that are contrary to the bankruptcy court's reasons for decision. We note that Congress has not provided bankruptcy courts with the general authority to annul state court orders. Instead, section 524(a) of the Bankruptcy Code provides:

> "A discharge in a case under this title —
> **(1)** voids any judgment at any time obtained, to the extent that such judgment is a determination of the personal liability of the debtor with respect to any debt discharged under section 727 . . . ; [and]

10

**(2)** operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor . . . ."
11 U.S.C. § 524(a).

The bankruptcy court granted Alan's motion for summary judgment after concluding that all of Vicki's claims, except for her claim to unpaid alimony, were barred by *res judicata* under "the *Howe* tests." Our opinion in *Matter of Howe*, 913 F.2d 1138 (5th Cir. 1990), described the four elements of *res judicata*. *Id.* at 1143–44. The principles of *res judicata*, however, are not directly applicable to the question in this case: To what extent are the state court's judgments void under section 524(a)(1)?[9] To answer this question, we focus instead on whether the amounts awarded by the state court represent "a determination of the personal liability of the debtor with respect to any debt discharged under section 727." 11 U.S.C. § 524(a)(1). If so, then the judgment is void to that extent. But if not, a federal court cannot turn to the principles of *res judicata* to find void (or annul) a state court judgment in these circumstances. Although we reject the

---

[9]We note that the principles of *res judicata* as described in *Howe* are typically employed in bankruptcy to prevent a debtor or trustee from bringing a claim that should have been brought in the initial bankruptcy proceedings. *E.g. In re Intelogic Trace*, 200 F.3d 382 (5th Cir. 2000); *Matter of Baudoin*, 981 F.2d 736 (5th Cir. 1993). In *Howe* itself, the question was whether the Chapter 11 debtors could, *five years* after the confirmation of their reorganization plan, pursue lender liability claims against two of their principal creditors. In that case, the creditors raised the defense of *res judicata* in their motion to dismiss. *Howe*, 913 F.2d at 1140. Because the claims at issue could have, and should have, been contested by the debtors in an adversary proceeding during the bankruptcy, we affirmed the dismissal on *res judicata* grounds. *Id.* at 1147.

bankruptcy court's reasoning in this case, we nonetheless review the record to determine if there are other appropriate grounds for affirming the summary judgment.

### III. The January 16, 1998 award for $77,900 plus interest

The January 16, 1998 state court order contains an award that is a perfect example of a judgment that is void under section 524(a)(1). The order directed Alan to pay Vicki $77,900 plus 6% annual interest from January 1, 1994. This amount represents the sale of Alan's medical practice that is described in paragraph eight of the settlement order. All but $20,000 of Alan's obligations under paragraph eight were discharged in Alan's original bankruptcy, and that $20,000 was explicitly converted by this court into five monthly alimony payments of $4,000 each. We hold that the January 16, 1998 state court award of $77,900 plus interest is void under section 524(a)(1) as a determination of Alan's personal liability for a debt discharged under section 727, and we affirm the summary judgment to the extent it rejects this state court award.

### IV. The June 18, 1998 award for $143,750

On June 18, 1998, the state court determined Vicki's losses associated with Alan's earlier failure to pay alimony. The state court directed Alan to pay Vicki $143,275, an amount determined from the following sums: (a) $6,000 for her expenses traveling to Louisiana to defend the settlement order in Alan's bankruptcy, (b)

12

$65,000 for her lost equity in foreclosed real property, (c) $10,000 for the value of her lost personal property, (d) $20,000 for her lost equity in a repossessed automobile, and (e) $42,275 in attorneys' fees that she incurred enforcing the settlement order.

**A.  *The state court's award for attorneys' fees is void in part***

The state court in its June 18, 1998 order awarded Vicki $42,275 for "attorneys' fees incurred in attempts to enforce the marital settlement order." Vicki argues that our decision in *Swate v. Hartwell*, 99 F.3d 1282 (5th Cir. 1996), stands for the proposition that any state court award for damages based on a debtor's failure to pay non-discharged alimony is also non-dischargeable. We disagree with her broad interpretation of *Swate*. In *Swate*, after the first bankruptcy court determined that certain obligations incorporated in Swate's divorce decree were in the nature of alimony and therefore non-dischargeable, Swate's ex-wife (Hartwell) won a state court judgment against Swate that included damages for past-due child support, past-due alimony, anticipatory breach of the alimony provisions of the divorce decree, and attorneys' fees. *Id.* at 1285. Swate then filed a second bankruptcy petition and argued that the state court judgment against him was dischargeable. *Id.* The second bankruptcy court disagreed, holding that Swate was barred by *res judicata* from challenging the non-dischargeability of this debt because "past, present, and future alimony and the attorneys fees and costs

13

related to the prosecution and collection of the same" had been *explicitly* excepted from the prior discharge. *Id.* We affirmed that judgment, noting that "[r]educing alimony obligations to a judgment does not change the substance of the liability for purposes of § 523(a)(5) even if the form has changed." *Id.* at 1289.

In this case, the bankruptcy court found *Swate* inapplicable because, unlike the judgment in Swate's first bankruptcy, the judgment in Vicki's adversary proceeding in Alan's original bankruptcy did not explicitly except from discharge attorneys' fees for collection of alimony. The bankruptcy court noted that the state court's award for attorneys' fees "for post-discharge collection and enforcement are clearly not within the scope of the *final* determinations between the Eglestons." While this may be accurate, it is not sufficient justification to find void the state court judgment for attorneys' fees. We agree with Vicki that a bankruptcy court judgment that excepts from discharge a stream of future support payments does not have to explicitly state that attorneys' fees related to the collection of those support payments are also excepted from discharge. For the same reason that we treat the reasonable attorneys' fees associated with establishing support obligations as an integral part of the support obligations, *see Matter of Hudson*, 107 F.3d 355, 357 (5th Cir. 1997); *Matter of Dvorak*, 986 F.2d 940, 941 (5th Cir. 1993), the reasonable

14

attorneys' fees associated with collecting support obligations should also be treated as support obligations. Conversely, those attorneys' fees associated with collecting discharged debt should be treated as discharged debt. *See Matter of Gober*, 100 F.3d 1195, 1208 (5th Cir. 1996) ("the status of ancillary obligations such as attorney's fees and interest depends on that of the primary debt").

The problem with Vicki's attorneys' fees in this case is that some of Vicki's legal proceedings were legitimate attempts to collect non-discharged alimony obligations, while some were illegitimate efforts to collect discharged debt. These illegitimate efforts led the district court to conclude that Vicki's entire award of attorneys' fees should be rejected under the equitable doctrine of unclean hands. While the district court explicitly declined to adopt the bankruptcy court's analysis regarding attorneys' fees, it determined, based on Vicki's unclean hands, that the bankruptcy court's decision to annul the state court's award of attorneys' fees was the most just and equitable solution to this litigation. While we agree in principle that the judgments below are just and equitable, the role of the federal courts in this case is not to entertain collateral equitable attacks on the state court's judgments.[10] We must give such

---

[10]The Supreme Court has noted that the principle of unclean hands "gives wide range to the equity court's use of discretion in refusing to aid the unclean litigant. It is not bound by formula or restrained by any limitation that tends to trammel the free and just exercise of discretion." *Precision Inst. Mfg. Co. v. Automotive M. M. Co.*, 65 S.Ct. 993, 997 (1945) (internal quotations omitted). More recently, however, the Court has noted, "whatever equitable powers remain

15

judgments full faith and credit with only such exceptions as Congress has provided. Specifically, under section 524(a)(1), the state court judgment awarding attorneys' fees to Vicki is void to the extent that those attorneys' fees were incurred in the determination of Alan's liability with respect to discharged debt. Because the record is insufficient to allow a determination on this issue, we remand this case to the district court with directions to remand the case to the bankruptcy court for further proceedings regarding the classification of the state court's award of Vicki's attorneys' fees.

## B.   *The state court's awards for damages due to lost equity are void*

The state court in its June 18, 1998 order awarded Vicki $65,000 for "the loss of equity in the real property located in Seven Springs, Pennsylvania" and $20,000 for "the loss in equity in the automobile repossessed by the bank, caused by [Alan's] refusal to pay the required alimony payments." The bankruptcy court annulled these awards after finding them barred by *res judicata* and noting that, unlike the state court judgment upheld in *Swate*, the

---

in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Norwest Bank Worthington v. Ahlers*, 108 S.Ct. 963, 969 (1988).

A determination by a federal court that one or more state-court litigants had unclean hands does not give that federal court the power to annul the resulting state-court judgment. As we have stated, "Other than lack of jurisdiction or fraud, there are no other federal grounds which nullify a state court judgment. *The doctrine of unclean hands is not the functional equivalent of fraud*." *Browning v. Navarro*, 887 F.2d 553, 563 (5th Cir. 1989) (emphasis added). Moreover, even "[f]raud does not normally constitute federal grounds to set aside a judgment." *Id.* at 563 n.17.

state court's judgment for Vicki was not a mere change in the form of the judgment rendered in Alan's original bankruptcy. The district court affirmed, holding that the bankruptcy court's decision that the damages were barred by *res judicata* was a finding of fact that was not clearly erroneous. Because of our earlier conclusion that the principles of *res judicata* do not apply in these circumstances, we do not address the issues associated with the district court's stated standard of review.[11] Instead, we again focus on whether the state court's judgment is void under section 524(a)(1). For these portions of the state court's judgment to be void, they must represent Alan's liability for discharged debt. In other words, Vicki's claim to these amounts must have arisen pre-petition. *See Matter of Southmark Corp.*, 88 F.3d 311, 317 (5th Cir. 1996) ("the meanings of the terms 'debt' and 'claim' are coextensive"). Vicki argues that her claims for lost equity arose post-petition. We disagree.

The definition of "claim" in the Bankruptcy Code is very broad. Specifically, the Code defines "claim" as a

"**(A)** right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,

[11]We simply note that the clearly erroneous review provided by Federal Rule of Civil Procedure 52(a) is not applicable to factual issues that have not been tried. Instead, the "rigid standards attendant upon the entry of summary judgment under Rule 56" must be applied. *Waganer v. Sea-Land Service, Inc.*, 486 F.2d 955, 960 (5th Cir. 1973); *see also New York Life Ins. Co. v. Baum*, 707 F.2d 870, 871 (5th Cir. 1983). In addition, the *res judicata* effect of a prior judgment is generally a question of law that should be reviewed *de novo*. *See Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 546 (5th Cir. 2001).

17

matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or

**(B)** right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured."  11 U.S.C. § 101(5) (2004).

The Supreme Court has explained that Congress intended "to adopt the broadest available definition of 'claim.'"  *Johnson v. Home State Bank*, 111 S.Ct. 2150, 2154 (1991).  In *Southmark* we noted, "The House and Senate Reports state that '[b]y this broadest possible definition [of the term "claim"] . . . the bill contemplates that all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case.'" 88 F.3d at 317 (quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977) and S.Rep. No. 989, 95th Cong., 2d Sess. 22 (1978)) (emphasis added in *Southmark*); *see also In re National Gypsum Co.*, 139 B.R. 397, 405 (N.D.Tex. 1992) ("the creditor need not have a cause of action that is ripe for suit outside of bankruptcy in order for it to have a pre-petition claim for purposes of the Code.").

In *Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268 (5th Cir. 1994), we considered the "question of how broad the term 'claim' is under the Code." *Id.* at 1275.  The issue presented in *Lemelle* was whether a claim for tort liability arose pre-petition.  We first noted that, while some courts have taken the view that "a 'claim' does not arise in bankruptcy until a cause of action has accrued

18

under non-bankruptcy law," other courts have rejected this "accrual theory" as interpreting the term "claim" too narrowly. *Id.* We then noted that some courts have determined when a claim arises based on the debtor's conduct, that is "if a debtor's conduct forming the basis of liability occurred pre-petition, a 'claim' arises under the Code when that conduct occurs, even though the injury resulting from this conduct is not manifest at the commencement of the bankruptcy proceedings." *Id.* We then discussed a third approach, by which courts "have determined that a claim arises at the time of the debtor's negligent conduct forming the basis for liability *only if* the claimant had some type of specific relationship with the debtor at that time." *Id.* at 1276. Following this third approach, we held that the tort liability claim did not arise pre-petition when the injury occurred more than three years after the petition and there was no "evidence of any pre-petition contact, privity, or other relationship between" the parties. *Id.* at 1277.

In this case, the $65,000 was awarded to compensate Vicki for her lost equity in real property that was foreclosed on after Vicki failed to make mortgage payments, which failure — according to the state court — was a result of Alan's breach of his obligation to make alimony payments. The record reflects that the foreclosure on Vicki's real property had commenced prior to Alan's bankruptcy petition. Similarly, the $20,000 was awarded to Vicki for lost

19

equity in an automobile that was repossessed after she failed to make her car payments. The record is clear that Alan breached his obligation to make alimony payments prior to filing his petition and that Vicki's car was "up for repossession" pre-petition. Under the Bankruptcy Code's broad definition of "claim" as described above, Vicki therefore had pre-petition claims for this debt.

These pre-petition claims represented pre-petition debt that was discharged in Alan's bankruptcy unless it is excepted from the discharge under section 523(a).[12] Vicki argues that these amounts are excepted from discharge under section 523(a)(5), or alternatively, under section 523(a)(15). Both arguments fail. Vicki cites to no cases, nor have we found any, that treat an award of consequential damages for the failure to pay alimony as being in the nature of alimony. In *Swate*, where we upheld the state court's judgment as only a change in the form of the previously non-discharged alimony obligation, we refused to indulge in Swate's speculation that the state court's judgment included consequential damages. 99 F.3d at 1289. In this case, there is no speculation required, as these awards are explicitly consequential damages.

---

[12]Since these pre-petition debts had not matured at the time of Alan's bankruptcy filing, Alan of course did not list them on his schedule under § 521(a)(1). The provisions of § 523(a)(3) excepting unlisted debts from discharge are not invoked, however, because Vicki had notice of the case in time to permit timely filing of a claim. 11 U.S.C. § 523(a)(3)(A). Because Alan's original bankruptcy was a no-asset chapter 7 case, no deadline was set for the filing of claims. In such a case, pre-petition debts are discharged even if they are not listed on the original schedules; in addition, there is no requirement for Alan to reopen his bankruptcy and amend his schedules to reflect these amounts. *See* 4 COLLIER ON BANKRUPTCY ¶ 523.09[1],[5] (15th ed. revised).

20

While they result from Alan's breach of his obligation to pay alimony, the awards themselves are not in the nature of alimony, maintenance, or support as required by section 523(a)(5).[13] Instead, the state court's judgment awards may well be the type of debt contemplated by section 523(a)(15). Unfortunately for Vicki, and as the lower courts correctly held, section 523(a)(15) is not available to allow Vicki to except from discharge any of Alan's debts that arose prior to the filing of Chapter 7 petition on March 14, 1994.[14] Therefore, these pre-petition debts were not excepted from Alan's 1994 discharge.

Because these two debts were discharged, the state court's judgment awards for $65,000 and $20,000 were a determination of Alan's personal liability with respect to a discharged debt, and are therefore void under section 524(a)(1).

## C. *The state court's award for lost personal possessions is not wholly void*

The state court in its June 18, 1998 order also awarded Vicki $10,000 for "lost personal possessions taken by [Alan] contrary to the provisions of the marital agreement order, and the balance which was sold by [Vicki] to live on when [Alan] refused to provide the required alimony payments." As with the other awards, the

---

[13]The state court did not modify the monthly alimony obligation to account for any change in Vicki's circumstances.

[14]Section 523(a)(15) was added to the Code by the Bankruptcy Reform Act of 1994 (PL 103-394) and was made effective only to cases filed on or after October 22, 1994.

bankruptcy court annulled this award based on principles of *res judicata*. We focus instead on the requirements of section 524(a)(1).

This award is considered in the two parts described by the state court. The first part is the amount related to those possessions that the state court found were improperly taken by Alan. If this taking occurred pre-petition, then Vicki had a pre-petition claim and Alan's liability for such taking represented a pre-petition debt that was discharged in bankruptcy. On the other hand, if the taking was post-petition, then Alan's liability for such taking is a post-petition debt that does not invoke section 524(a)(1). The second part is the amount associated with the property that the state court decided that Vicki was forced to sell due to Alan's failure to pay alimony. Vicki's testimony indicates that she sold at least some of this property post-petition, but if any of the losses associated with this portion of the award were incurred pre-petition, then Alan's liability for such losses was a pre-petition debt that was discharged in his bankruptcy. To the extent the $10,000 award represents a determination of Alan's discharged pre-petition debt, it is void under section 524(a)(1). We remand this issue for a factual determination of how this $10,000 award breaks down into pre-petition and post-petition claims.

**D.   *The state court's award for travel expenses is not void***

22

The final portion of the state court judgment at issue in this case is the $6,000 which the June 18, 1998 order awarded to Vicki "for expenses incurred by [Vicki] in traveling to Louisiana to defend the property settlement agreement when [Alan] attempted to discharge the same in bankruptcy."  Vicki's claim for this sum arose post-petition and thus Alan's liability for this sum was not a pre-petition debt that was discharged in bankruptcy.  Therefore the state court judgment award for this amount is not void under section 524(a)(1).

To summarize, we affirm the summary judgment to the extent it rejects[15] the state court's award of $77,900 plus interest.  In addition, we affirm the summary judgment to the extent that it rejects the state court's awards of $65,000 for lost equity in real property and $20,000 for lost equity in an automobile.  We reverse the summary judgment to the extent that it rejects the entire state court award of $42,275 in attorneys' fees.  The state court's award of attorneys' fees is only void to the extent that it awards attorneys' fees that were incurred in pursuit of discharged debt.  We remand for a factual determination of the amount of attorneys' fees that were related to Vicki's legitimate efforts to collect alimony.  We reverse the summary judgment to the extent it rejects entirely the award of $10,000 and we remand for a factual

---

[15]Although we disagree with the bankruptcy court's method of rejecting the state court's awards (by purporting to annul them), we nonetheless agree that portions of these awards must be rejected as void under § 524(a)(1).

23

determination of the amount of this debt that arose post-petition. We reverse the summary judgment to the extent it rejects the award of $6,000.

### V. *The dischargeability of the surviving amounts in the second bankruptcy*

On remand, the only surviving portion of the $42,275 awarded for Vicki's attorneys' fees will necessarily be the amount associated with Vicki's legitimate efforts to collect alimony. As such, this amount should be excepted from discharge in Alan's second bankruptcy under section 523(a)(5). Any surviving portions of the award of $10,000 and the award of $6,000 must then be analyzed under section 523(a)(15) to determine whether they should be excepted from discharge in Alan's second bankruptcy.

### Conclusion

For the foregoing reasons, we affirm the summary judgment in part, reverse it in part, and remand the case for further proceedings consistent with this opinion.

AFFIRMED in part; REVERSED in part and

REMANDED for further proceedings.

24