[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11974
Non-Argument Calendar

_____

D.C. Docket No. 8:11-cv-00377-MSS-TBM

BERNARD CAMPBELL,

Plaintiff-Appellant,

versus

ERIC SHINSEKI, SECRETARY,
U.S. DEPARTMENT OF VETERANS AFFAIRS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(November 25, 2013)

Before HULL, MARCUS, and JORDAN, Circuit Judges.

PER CURIAM:

Rev. Bernard Campbell, proceeding *pro se*, appeals the district court's order which granted the renewed and amended motion for summary judgment of the United States Department of Veterans Affairs ("the VA") on his Title VII

employment discrimination claims.  Rev. Campbell had alleged disparate treatment based on his religion, race, and gender, as well as retaliation.  On appeal, Rev. Campbell raises three issues.  First, he argues that the district court erred in ruling that he failed to provide sufficient evidence of pretext to rebut the VA's legitimate, non-discriminatory reasons for terminating him.  Second, he asserts, for the first time, that statements of his direct supervisor constituted direct evidence of racial and gender discrimination.  Finally, he contends that the district court erred by failing to address his objections to evidence which supported the VA's motion for summary judgment under Rule 56(c)(2) of the Federal Rules of Civil Procedure and that the court's grant of summary judgment based on evidence which would be inadmissible at trial warrants reversal.

We affirm. We do not address the argument concerning direct evidence because Rev. Campbell did not make this argument to the district court.  *See* D.E. 43 at 10; *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) ("*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys . . . . But, issues not raised below are normally deemed waived.") (citations omitted).

# I

In November of 2009, the VA terminated Rev. Campbell—who identifies as a Protestant, African-American male—from his position as a Chaplain Resident

2

and Clinical Pastoral Education ("CPE") student after he had been employed for about six weeks at a VA hospital in Tampa, Florida. Rev. Campbell's educational supervisor was an African-American female named Brenda Wallace, who identified as a "liberal womanist theologian." D.E. 29 at 6. The other student chaplains were Loreen O'Brien, Karen Morris, and Carey Young, who all identified as Caucasian females. Rev. Young identifies as a Presbyterian while Rev. O'Brien and Rev. Morris identify as Christian. The supervisor for all personnel in the Chaplain Service was James Taylor, the VA CPE Program Director—who identified as a Caucasian male.

During Rev. Campbell's employment, Rev. Young and Rev. O'Brien filed Reports of Contact against Rev. Campbell, indicating that he had made each of them feel threatened on two separate occasions.[1] Rev. Campbell also e-mailed Chaplain Taylor to express his concerns about Chaplain Wallace, including a specific statement she made to him during an altercation: "Did you ever think I am hard on you because you are a man, a black man among three white women?" D.E. 41 at 6.

Pursuant to the CPE's policy, Chaplain Taylor notified Rev. Campbell that the body responsible for handling disciplinary action—the Professional Advisory Group ("PAG")—was convening an investigative panel to address the two Reports

---

[1]    These include an occasion where Rev. Campbell blocked the exit of Rev. O'Brien during a heated discussion and another involving group conversation about a recent workplace shooting.

3

of Contact and to address Rev. Campbell's complaints about Chaplain Wallace. The investigative panel that handled Rev. Campbell's case consisted of five members of the PAG, including Chaplain Taylor. The PAG panel convened and interviewed Chaplain Wallace along with Revs. Campbell, Young, O'Brien, and Morris. After the interviews and upon review of the Reports of Contact and Rev. Campbell's concerns, the PAG panel unanimously recommended Rev. Campbell's termination.

Following the unanimous recommendation, the VA issued Rev. Campbell a termination letter signed by Neal Hamilton, Chief of the Human Resources Management Service. D.E. 39-1 at 1-5. The letter gave Rev. Campbell three reasons for his termination: (1) "the failure to show your CPE Supervisor the ability to enter the CPE Process Learning environment;" (2) "posing a threat to peers;" and (3) "your stated unwillingness to enter the educational environment unless the supervisor limits the process learning to those learning experiences that are approved by you." D.E. 39-1 at 2.

Rev. Campbell filed suit under Title VII, alleging disparate treatment based on his religion, race, and gender, as well as retaliation. The VA filed a motion for summary judgment, which the district court denied largely because the VA had failed to authenticate the Reports of Contact and termination letter. D.E. 32 at 8-10. After correcting this defect by submitting a declaration from the VA's

custodian of records, the VA filed an amended summary judgment motion. *See* D.E. 39-3. In response, Rev. Campbell raised three objections to the admissibility of the Reports of Contact and the termination letter under Federal Rule of Civil Procedure 56(c)(2). The district court granted the VA's amended summary judgment motion without expressly ruling on Rev. Campbell's Rule 56(c)(2) objections. *See* D.E. 43. Rev. Campbell timely appealed.

## II

We review a district court's grant of summary judgment *de novo*, drawing all reasonable factual inferences and viewing all evidence in the light most favorable to the non-moving party. *See Kragor v. Takeda Pharm. Am., Inc.*, 702 F.3d 1304, 1307 (11th Cir. 2012). Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The substantive law will identify which facts are material," and material facts are those which are key to establishing a legal element of the substantive claim which might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## A

A plaintiff can establish a claim of unlawful discrimination under Title VII through direct or circumstantial evidence. *See Akouri v. Fla. Dep't of Transp.*, 408

F.3d 1338, 1347 (11th Cir. 2005).  When such a claim is based on circumstantial evidence, we analyze the allocation of burdens and the presentation of proof under the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Kragor*, 702 F.3d at 1308.

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination, which "in effect creates a presumption that the employer unlawfully discriminated against the employee."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  If a plaintiff can establish a prima facie case, the burden shifts to the employer to rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for the adverse employment action.  *See McDonnell Douglas*, 411 U.S. at 802-03. "[T]o satisfy that burden of production, the defendant need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Kragor*, 702 F.3d at 1308.

If an employer satisfies this burden, "the plaintiff is afforded an opportunity to show that the employer's stated reason is a pretext for discrimination." *Id.* (citing *Reeves,* 530 U.S. at 143, and *McDonnell Douglas*, 411 U.S. at 804).  *See also Kragor*, 702 F.3d at 1308 n.1 (noting this does not shift the burden to the plaintiff but provides "an opportunity to present evidence from which the trier of

fact can find unlawful discrimination"). "If a plaintiff produces sufficient evidence that the employer's proffered reason is merely pretextual, that evidence may sometimes be enough to preclude summary judgment in favor of the employer." *Id.* at 1308-09 (citations omitted). We now examine whether Rev. Campbell provided sufficient evidence of pretext to preclude summary judgment in favor of the VA on each of his claims.[2]

A plaintiff can show pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256. *See also Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) ("[w]hen a plaintiff alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision") (citing *Reeves*, 530 U.S. at 141).

Rev. Campbell attempts to directly show pretext through Chaplain Wallace's statement to him: "Did you ever think I am hard on you because you are a man, a black man among three white women?" D.E. 41 at 6. The record shows, however, that Chaplain Wallace played no part in the process of deciding whether Rev.

---

[2]    The VA conceded for the sake of argument that Rev. Campbell could establish a prima facie case for all of his claims, and focused only on the issue of whether he could show that the VA's legitimate, non-discriminatory reasons for terminating him were pretextual. Because the district court did not address whether Rev. Campbell could establish a prima facie case, though it had "serious doubt," D.E. 43 at 12, we do not address the issue either and move directly to the issue of pretext.

7

Campbell would be terminated; she did not sit on the five-member PAG panel that voted unanimously to recommend termination. *See* D.E. 39-1 at 5. Rev. Campbell thus provides no direct evidence that the five-member PAG panel was motivated by any reason to recommend his termination other than what is stated in the termination letter—let alone a reason based on Rev. Campbell's race, gender, religion, or the fact that he filed a complaint against his supervisor. *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("remarks by non-decisionmakers or remarks unrelated to the decisionmaking process itself are not direct evidence of discrimination").

Nor does Rev. Campbell successfully show that the three reasons the VA provided in the termination letter are unworthy of credence. For example, Rev. Campbell provides no evidence that shows his "performance was satisfactory—if not exemplary." Appellant Br. at 19. Also, though the fact that Chaplain Wallace was reprimanded and terminated sometime after Rev. Campbell may cast some doubt on whether it was appropriate for Chaplain Taylor or the PAG panel to rely on her assessments of his ability to learn in determining whether he should be terminated, it certainly does not undermine the credibility of Rev. Campbell posing a threat to his peers or his stated unwillingness to cooperate with the curriculum. Finally, Rev. Campbell's claims that the assertions in the Reports of Contact against him "are false and the result of collusion," D.E. 41 at 8, are insufficient to

show the reasons for his termination are pretextual.   The PAG panel, which included Chaplain Taylor, conducted an investigation by hearing from Rev. Campbell and Chaplain Wallace, Rev. O'Brien and Rev. Morris and reviewing all related complaints—including Rev. Campbell's Resident Complaint against Chaplain Wallace.  The PAG panel formed its recommendation to terminate Rev. Campbell based on this investigation, and based on Rev. Campbell's evidence, we see no reason to question the veracity of the PAG panel's belief that Rev. Campbell was unsuccessful in his employment for legitimate, non-discriminatory reasons.  *See Wilson*, 376 F.3d at 1092 ("The role of this court is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments.").   In sum, Rev. Campbell's attempt to show pretext fails.  *Cf. Kroger*, 702 F.3d at 1310-11 (reversing grant of summary judgment to employer where plaintiff raised genuine issue of pretext by providing evidence of statement by final decisionmaker that permitted reasonable interpretation that employer's "proffered nondiscriminatory reason was a cover-up for discrimination").

**B**

We now turn to the issue of Rev. Campbell's Rule 56(c)(2) objections.  Rev. Campbell argues the district court committed reversible error by not explicitly

9

addressing his objections and by relying on the Reports of Contact filed against him and his letter of termination.  We disagree.

**1**

First, though we do not encourage the practice, the district court did not commit reversible error by failing to explicitly overrule or reject Rev. Campbell's objections. A district court's failure to explicitly make an evidentiary determination does not require remand if the record clearly supports the district court's implicit determination. *See United States v. Taylor*, 88 F.3d 938, 944 (11th Cir. 1996) (affirming though district court's ruling on sentencing enhancement did not include individualized findings); *United States v. Villarino*, 930 F.2d 1527, 1528-29 (11th Cir. 1991) ("summary disposition of the parties' dispute has not precluded meaningful appellate review") (internal citations omitted).  The district court's order is best characterized, in part, as an evidentiary ruling on Rev. Campbell's objections *sub silentio*. *See Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 973 n.39 (11th Cir. 2008) ("What we have, then, is a final judgment in which the court, in its sweeping statement that all Title VII claims are time-barred, included Jackson's claims *sub silentio*.").

Rule 56(c)(2)'s language and its corresponding advisory committee notes provide guidance here.[3]  Rule 56(c)(2) explains that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2).  Among other changes, Congress amended Rule 56 in 2010 to include this language.  Before this amendment, parties properly challenged evidence used in a summary judgment motion by filing a motion to strike.  *See* Rule 56, advisory committee's note to 2010 amendments ("There is no need to file a separate motion to strike.").  The plain meaning of these provisions show that objecting to the admissibility of evidence supporting a summary judgment motion is now a part of summary judgment procedure, rather than a separate motion to be handled preliminarily.  *See Cutting Underwater Technologies USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir. 2012) ("[I]t is no longer necessary for a party to file such a motion; instead, a party may simply object to the material.").

Though the district court may not have explicitly addressed Rev. Campbell's objections, *see generally* D.E. 43, it implicitly disposed of them by granting the summary judgment motion and relying on the evidence Rev. Campbell objected to

---

[3]     We have explained that although the interpretations in the advisory committee notes are not binding, they are highly persuasive. *See Horenkamp v. Van Winkle & Co., Inc.*, 402 F.3d 1129, 1132 (11th Cir. 2005).

11

in its order—as part of the court's process of deciding the summary judgment motion "upon consideration of all relevant filings." *Id.* at 1.

We now turn to whether the district court's reliance on the objected-to evidence in ruling on the VA's summary judgment motion is grounds for reversal.

**2**

We review a district court's evidentiary rulings for an abuse of discretion. *Anderson v. WBMG-42*, 253 F.3d 561, 564 (11th Cir. 2001). Once a party makes a Rule 56(c)(2) objection, "the burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56, advisory committee's note to 2010 amendments. Rev. Campbell raised three Rule 56(c)(2) objections. *See* D.E. 42.

He first objected to use of the Reports of Contact filed against him and the termination letter. *Id.* at 1. By asserting Rule 56(c)(2) itself as a legal basis, however, Rev. Campbell essentially argued that the reports and letter were inadmissible at trial without providing a legal theory to explain why. As a result, we must review the court's implicit ruling on this objection for plain error. *See United States v. Massey*, 443 F.3d 814, 818 (11th Cir. 2006) ("when the appealing party does not clearly state the grounds for an objection in the district court, we are

12

limited to reviewing for plain error") (citation omitted). Under this standard, reversible error exists where there is "(1) an error, (2) that is plain, and (3) that affects substantial rights and then only if (4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.*

Here, the district court did not commit an error by implicitly overruling this objection. The district court denied the VA's first summary judgment motion because the VA had failed to authenticate the Reports of Contact and the termination letter. *See* D.E. 32 at 8-10. The VA corrected this defect by submitting a declaration by the VA's custodian of records with its amended summary judgment motion. *See* D.E. 39-3. Thus, the court did not err by relying on the Reports of Contact and the termination letter to decide the amended motion because the VA's authentication rendered them admissible under the business records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). *See also Allen v. Safeco Ins. Co. of Am.*, 782 F.2d 1517, 1519 (11th Cir. 1986).[4]

Rev. Campbell's second objection concerned two sentences in the VA's amended motion—he argued that counsel for the VA was "testifying" and that it was "complete speculation and fabrication." D.E. 42 at 1. The district court did

---

[4]    For the first time on appeal, Rev. Campbell contests the competency of the custodian who authenticated the Reports of Contact and termination letter. We do not consider this argument as it was not raised below. *See Tannenbaum*, 148 F.3d at 1263.

not abuse its discretion in implicitly overruling this objection because arguments of counsel do not constitute substantive evidence.

Finally, Rev. Campbell objected to the partial inclusion of a statement he made, arguing that the failure to provide the entire statement made the admission of the partial statement improper under Rule 106 of the Federal Rules of Evidence. The district court did not abuse its discretion in implicitly overruling this objection because Rev. Campbell's available remedy was to insist upon the inclusion of the entire statement, rather than the exclusion of the excerpt submitted by the VA. *See* Fed. R. Evid. 106 ("an adverse party may require the introduction, at that time, of any other part . . . that in fairness ought to be considered at the same time").

## III

Accordingly, because Rev. Campbell did not provide any evidence of pretext and because the district court did not commit reversible error, we affirm.

**AFFIRMED.**